## UNITED STATES *v.* VILLALONGA.

Under the Abandoned and Captured Property Act, which gives to "the owner" of any such property a right, after it has been sold by the government, to recover the proceeds of it in the Treasury of the United States, a factor who has merely made advances on the property—there

being another person who has the legal interest in the proceeds—is not to be regarded as " the owner ;" at least not to be so regarded beyond the extent of his lien.

APPEAL from the Court of Claims; the case being thus:

The third section of the act of Congress of March 12th, 1863,* which authorizes a suit against the United States for the recovery of the proceeds of sale of captured or abandoned property, enacts that—

" Any person claiming to have been the *owner* of any such abandoned or captured property, may at any time within two years after the suppression of the rebellion, prefer his claim to the proceeds thereof in the Court of Claims, and on proof to the satisfaction of the court of his ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, receive the residue of said proceeds after the deduction of any purchase-money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expense attending the disposition thereof."

Under this enactment one Villalonga filed a petition in the court below to recover the proceeds of four hundred and ninety-three bales of cotton which were seized by the army of the United States at Savannah, in December, 1864. After its seizure the cotton was turned over to the agents of the Treasury Department and sold, and the proceeds of the sale were paid into the treasury. Of the whole number of bales captured, one hundred and ninety-six belonged to Villalonga, but the remainder he had received as a *cotton factor* from various persons, and had made advances thereon in money of the Confederate States. The aggregate of these advances was $51,153. It did not appear from the case as found who these different owners were, how much had been advanced to each, or what was the value of the advances in money of the United States. Upon this state of facts the Court of Claims gave judgment in favor of Villalonga, not

---

* 12 Stat. at Large, 820,

only for the proceeds of sale of the cotton which belonged to him in his own right, but also for the entire proceeds of that which he had received as a factor, and upon which he had made advances.

The court rested its judgment upon the case of *Carroll* v. *United States;** a case in which property owned by a disloyal person, had after his death, and when in the hands of the administrator of his estate, who was loyal, been seized by the government under the above-quoted Abandoned and Captured Property Act, and sold. This court then adjudged, that on a claim by the loyal administrator, the disloyalty of the *decedent* did not bar a recovery; that the administrator, who, said the court, "had a title on which she could maintain trespass or trover," was to be considered "owner," within the meaning of the Abandoned and Captured Property Act.

The Court of Claims, in support of its judgment, said:

"The Supreme Court of the United States decided in *Carroll* v. *United States*, that a suit may be maintained under the Abandoned and Captured Property Act by one who was not the owner in his own right, but who, at the time of seizure, was possessed of the property under a title upon which he could maintain an action of trover or trespass, and who, at the time of bringing suit, was entitled to receive the proceeds as the trustee or representative of parties not before the court. We perceive no difference in principle between the case of an administrator and of a factor in possession with a lien upon the property for advances made. The factor is entitled to hold the property. He may sell it to repay his advances, or maintain an action of trover or replevin, to the exclusion of any action by his principal, and on recovering its value he becomes a trustee of the original owner to the extent of his residuary interest. It may be doubted whether the original owner, not in possession, not entitled to possession, and not primarily entitled to the proceeds, could maintain a suit here under the statute; and it is tolerably certain that he and the factor could not have brought several and conflicting suits for their respective interests, and

---

* 13 Wallace, 151.

compelled this court to settle disputed accounts between them. Therefore it seems tolerably clear that this suit is properly brought by the factor, who, on recovering, will be liable to his principal for the surplus after repaying his own advances, as if this suit were an action of trover brought in a court of the common law."

Whether the judgment of the Court of Claims, given on this view of the case, of *Carroll* v. *United States*, was correct on such a state of facts as existed in the present case, was the question now presented, and the answer to it depended, of course, upon the answer to the antecedent inquiry whether, as to the cotton upon which the claimant had made partial advances as a factor, he could be considered the owner thereof, and as having a right to its proceeds, within the meaning of the act of Congress.

Certain laws of Georgia, which the claimant relied on as bearing on his case, were as follows:

"SECTION 1987. The lien given by the common law to attorneys, *factors*, . . . pawnees, and others, under special circumstances (except the vendor's lien), are recognized by and may be enforced under the law of Georgia.*

"SECTION 2090. A factor's lien extends to all balances on general account, and *attaches to the proceeds of the sale of the goods consigned as well as to the goods themselves.*

"SECTION 2965. The owner of personalty is entitled to the possession thereof. Any deprivation of such possession is a tort for which an action lies.

"SECTION 2966. Mere possession of a chattel, if without title or wrongfully, will give a right of action for any interference therewith, except as against the true owner or the person wrongfully deprived of possession.

"SECTION 2967. Trover may be used as a form of action to recover the possession of chattels, an alternative verdict in damages, to be discharged on delivery of the property that has been taken; but it shall not be necessary to prove any conversion of the property where the defendant is in possession when the action is brought.

---

* Code of Georgia, 1861, pp. 393, 410, 551, 552.

"SECTION 2969. In cases of bailments, where the possession is in the bailee, a trespass committed during the existence of the bailment will give a right of action to the bailee for the interference with his special property, and a *concurrent right of action to the bailor for the interference with his general property.*"

Mr. *G. H. Williams, Attorney-General, and Mr. John Goforth, Assistant Attorney-General, for the United States, plaintiff in error:*

The right of the factor to the possession of this property was limited by the amount of his advances. This would be true putting the case on general principles. And there is nothing in the Code of Georgia which changes these general principles. To the extent of the interference with his "special" property, that code, by its section 2969, gave him an action of trespass, while a concurrent right of action is given to the bailor for interference with the general property. No right is given to the bailee or tenant in possession to recover, in an action in his own name, for the injury done to the rights of the general owner.

The cotton having been taken under authority of law, by a force which the factor could not resist, he has incurred no personal responsibility from its seizure.

The personal loss or damage suffered by claimant, of course, is measured by the value of the advances. He had no interest in the cotton beyond these.

Carroll's case does not sustain the judgment of the court below.

Messrs. *J. W. Denvers and C. F. Peck, contra:*

It is objected, as respects the cotton not, in fact, owned out and out by Villalonga, that if he was entitled to judgment at all, his recovery should have been limited to his own interest as factor. But a factor who sues, sues in his own right. *He* is owner of the property for the purposes of the suit. In *Carroll* v. *United States,* the administratrix was not more the representative of the testator than the factor here

was of the owner of the reversionary interest. But this court held the administratrix to be owner.

If this position be true in cases generally, as this court declared it in Carroll's case to be, much more is it true in this particular case. By the law of Georgia, from which State this case comes, the factor is regarded as the *owner* of the property held by him, as against those taking it from his possession. The code (section 2996) gives an action of "trover" in a suit like this, to one who is merely *possessed* of chattels. Now the action of trover is founded on *property;* and property must be alleged in the *narr.* Without property so alleged the action cannot be maintained. The code, therefore, for the purposes of a suit like this one, makes mere possession evidence of property, in other words, declares that the possessor is to be regarded as owner.*

The theory of the Captured and Abandoned Property Act, as explained by this court in *United States* v. *Klein,*† is that property found by armies in the South was gathered and preserved from destruction for the purpose of awaiting such action as the political department of the government might see fit to take; that no title or right was divested by the seizure, but that this was an incipient step by which the United States might afterwards acquire title through appropriate confiscation proceedings in the courts. But where, as in this case, no offence had been committed full restitution should be made. The United States, therefore, in this case became bound to make restitution. Is there any violence done to the course of law, or to the cause of justice, because in a court not governed by common law forms,‡ the factor, from whose possession the cotton was taken, obtains a decree that restitution be made to him? The justice and equity of the case is that the factor should recover the entire proceeds, and make his own settlement with his principals, otherwise the Court of Claims would be compelled to decide between them the questions of commission, storage, amount

---

* See Note of Sergeant Williams, 2 Saunders, 47 *a*, n. 1.

† 13 Wallace, 128

‡ United States *v.* Burns, 12 Wallace, 254.

of advances, rate of interest, &c.; and that court was never intended to adjust controversies between individuals, in which the government has no interest.

The principals in this case having clothed the factor with a special ownership in the property, have left him to assert the title for their use and benefit. They have seen fit to continue him as their representative, and are now awaiting a settlement at his hands, as soon as he shall receive the proceeds of the property intrusted to him.

The appellant assumes that if the principals could maintain their action here, then the factor cannot recover for their interests. This is a mistake. There are many cases in which an election is given either party may bring the action, but one only can recover.

"In the case of a general as well as special property, the action may in most cases be brought either by the general or special owner, and judgment obtained by one is a bar to an action by the other."*

And this principle is applicable to actions *ex contractu*, as well as to actions founded in tort.†

*Reply:*

Though the action of trover is undoubtedly founded on property as distinguished from possession, a *special* property is sufficient to maintain it, and is just as good for that purpose as a general property.‡ Such special property we admit the factor to have, but the general property being still in his principal, our argument remains unanswered. The distinction between the two sorts of property is strongly recognized in section 2969 of the code.

Mr. Justice STRONG delivered the opinion of the court.

No doubt a factor who has made advances upon goods consigned to him, may be regarded, in a limited sense, and

---

* 1 Chitty on Pleading, 140, 9th American edition, by Perkins, note 4, citing Smith v. James, 7 Cowan, 328.

† 1 Parsons on Contracts, ch. 3, § 6.

‡ See note of Sergeant Williams cited *supra*, p. 40.

to the extent of his advances, as an owner. Yet, in reality, he has but a lien with a right of possession of the goods for its security. He may protect that possession by suit against a trespasser upon it, and he may sell the property to reimburse advances; remaining, however, accountable to his consignor for any surplus. But after all he is not the real owner. He is only an agent of the owner for certain purposes. The owner may, at any time before his factor has sold the goods, reclaim the possession upon paying the advances made, with interest and expenses. He has not lost his ownership by committing the custody of the goods to a factor and by receiving advances upon them. He is still entitled to the proceeds of any sale which may be made, even by his agent, the factor, subject only to a charge of the advances and expenses. A factor, therefore, notwithstanding he may have made advances upon the property consigned to him, has but a limited right. That right is sometimes called a special property, but it is never regarded as a general ownership. At most, it is no more than ownership of a lien or charge upon the property. Such is unquestionably the doctrine of the common law. And there is nothing in any statute affecting this case that changes the doctrine. Certainly the statutes of Georgia, whence this case comes, have no such effect. In the code of that State of 1861, while a factor's lien is recognized and declared to extend to all balances on general account, and to attach to the proceeds of sale of goods consigned as well as to the goods themselves, there is nothing that declares he has anything more than a lien protected by his possession. Injuries to that possession may indeed be redressed by action in his name, and it may be assumed that upon contracts of sale made by him he may sue, but all this is perfectly consistent with the continuance of the general ownership in his consignors until he has made a sale. And there is a very significant clause in the statutes of the State which shows that a factor there has not the general property. In section 2969, of the article respecting injuries to personalty generally, it is enacted that "in cases of bailments, where the possession is in the bailee, a tres-

pass committed during the existence of the bailment will give a right of action to the bailee for the interference with his *special property*, and a concurrent right of action to the bailor for interference with his *general* property." If this applies to the case of bailment to a factor, as is supposed by the defendant in error, it is a clear declaration that the factor's right does not extend beyond a special property, a mere right to hold for a particular purpose, and that it does not amount to ownership of the property consigned to him. And there is nothing in the new code of Georgia, or in any of the decisions of the Supreme Court, that is variant from this. Admit that a factor may maintain an action when his possession is disturbed, still it is a question what may he recover? Under the statutes of Georgia he can recover only for the injury which his special property, namely, his lien, has sustained. For all beyond that, the general owner may sue. The property of that owner is not vested in his factor.

If, then, it be, as was said by the Chief Justice in Klein's case, that the government constituted itself the trustee of captured or abandoned property for the original owners thereof, it is hard to see how the trust can exist for the benefit of the owner of a special property therein beyond the extent of his interest, which, as we have seen, in case of a factor, is measured by the amount of his advances and expenses.

For all beyond that, by the law of Georgia, the original owner who consigned the goods to the factor might sue, and for that original owner the government became a trustee of all beyond the factor's interest, according to the doctrine of Klein's case.

In this view of the case in hand it is clear that the claimant is not the "owner of the" captured "property," "having a right to the proceeds thereof," within the meaning of the Captured or Abandoned Property Act. He owns of the cotton consigned to him nothing but a lien for his advances and expenses, and he is, therefore, not entitled to the entire proceeds of the sale of the property.

There are other considerations that support this conclu-

sion.  Plainly it was the intention of Congress, manifested in the statute, that no person should be permitted to recover out of the treasury any of the proceeds of sale of the property captured or abandoned, except those who had given no aid or comfort to the rebellion.  But if a factor who has made advances, no matter how small, may recover the entire proceeds of a consignment made to him, not only what he has advanced, but the share of his principal, the intention of the law may be wholly defeated.  He may have received consignments from persons most active in promoting the rebellion, and he may have advanced only one dollar on each bale of cotton consigned.  If, now, he can recover the entire net proceeds of the sale of such cotton paid into the treasury, his consignors, through him, using him as a cover, escape entirely from the operation of the provision of the statute—that no one shall have a standing in the Court of Claims who has given aid and comfort to the rebellion.  A construction of the law which admits of such a consequence cannot be correct.  The intention of Congress is not thus to be evaded.

There is yet another consideration not to be overlooked.  Under the act of March 3d, 1863,* amending the act to establish the Court of Claims, that court has power to consider and determine all set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other claims which the government may have against any claimant in the court, and render judgment against such claimant if he be found indebted to the government.  Can a debtor to the United States evade his liability to a judgment against him by consigning his property to a factor and obtaining some advances?  May the factor recover all that is in the treasury; though the government may have large claims against his principals, who are the real parties in interest?  We cannot think the acts of Congress admit of such an interpretation.  These considerations show that the " owner," spoken of in the third section of the Captured and Abandoned Property

---

* 12 Stat. at Large, 765.

Act, " having a right to the proceeds thereof," is he who has the legal interest in those proceeds, and that a factor who made advances before the capture can, at most, recover only to the extent of his lien.

The court below rested their judgment upon Carroll's case, but that case, in our opinion, has little analogy to this. There, an administratrix of a deceased person was the claimant, and it was held to be no bar to the suit that the decedent gave aid and comfort to the rebellion, the property having been taken after his death from the administratrix, and not from him, and the administratrix was declared to be the owner within the meaning of the statute. Undoubtedly she was the full legal owner, entitled both in law and in equity to the entire property. Hers was the only title which existed at the time of the capture. Through whom she acquired it was deemed immaterial. It was sufficient that no other person had a definite right. This is no such case. Here there are owners, both in law and in equity, other than the claimant, and the statute has opened the Court of Claims for them, if they have never given aid or comfort to the rebellion. The present claimant, at most, is entitled to no more than the net proceeds of sale of his own cotton, one hundred and ninety-six bales, and the amount of his advances on the other cotton, reducing those advances to their worth in the money of the United States at the time the advances were made.

JUDGMENT REVERSED, and the cause REMITTED with instructions to proceed

IN CONFORMITY WITH THIS OPINION.