### STEIGER and others *v.* THIRD NATIONAL BANK.

*(Circuit Court, E. D. Missouri.    April 18, 1881.)*

1. FACTOR—PLEDGE OF GOODS—STATUTES OF MISSOURI.

> Under the statutes of Missouri a factor is not authorized to pledge the consignor's goods for an amount beyond the sum of the advances and charges thereon.

2. SAME—CONVERSION—TENDER.

> In such case a tender of the advances and charges must first be made by the consignor before suit can be maintained for the conversion of the goods.—[ED.

Demurrer to Answer.

*George A. Madill* and *Henry E. Mills,* for plaintiff.

*Overall, Judson & Tutt,* for defendant.

TREAT, D. J.    The plaintiffs aver that they shipped certain chattels (described) to their factors in St. Louis for sale; that said factors, without plaintiffs' consent, pledged the same to the defendant, with full knowledge on the part of the defend-

ant that the pledgors were plaintiffs' factors, and that said chattels were the property of the plaintiffs, and that the plaintiffs demanded of the defendant the delivery to them of said property, which was refused. These averments are followed with the formal charge of conversion.

The *answer* states that the plaintiffs were indebted to their factors for charges and advances on the specific chattels, without stating the amount thereof; that said chattels had been deposited in a warehouse, and a warehouse receipt therefor given to the factors; that said factors pledged to the defendant said chattels and warehouse receipt in order to raise means to pay said charges and advances; and that the defendant, "on the faith of said goods and chattels and warehouse receipt, duly indorsed by the factors, loaned to said factors $10,557.37, which sum is still due and unpaid." The answer does not aver that said sum loaned was the amount of advances, etc.

The second defence is that the defendant did not know, etc., that, as to said chattels, the plaintiffs were owners or consignors thereof, and that the pledgors were factors merely; but, on the contrary, that said alleged factors, having the warehouse receipt, and the defendant believing said factors to be the owners, the defendant did, "on the faith of said receipts," etc., loan said sum of money to said factors, whereupon said chattels were transferred to the defendant, and said warehouse receipt indorsed and delivered.

The demurrer is to the first and second specific defences, as stated. The *first* is designed to raise the question whether a factor cannot, under the Missouri Statutes, assign a warehouse receipt, and pledge the chattels to raise money for advances and charges to an indefinite amount, even if the pledgee knows the factor's relation to the property. If not so, the amount of said advances and charges ought to have been stated, so that it would appear whether the pledge was for a larger sum than the factor's lien. Is it intended to assert that if advances and charges exist, or are about to be created, the factor may pledge *generally*, even when the pledgee knows the precise relation of the factors to the property?

The *second* defence raises the question whether a party receiving an assignment of a warehouse receipt, believing the assignor to be the owner of the property, cannot hold the same against the real owner for the amount loaned on the faith thereof, irrespective of the state of the accounts between consignor and consignee.

A full review of the subject would be advisable, if time permitted, requiring an analysis of the various decisions and the statutes under which they were made; but such a review would compel a consideration, not of elemental principles alone, but of their modifications through English and American statutes, in the light of judicial interpretation of the respective statutes; such a review looking to the true interpretation, persuasively, of the Missouri Statutes.

In 18 Missouri, 147, 191, the true doctrine of the common law was stated and enforced, to-wit, that a factor could not pledge his principal's goods. Prior to that time, both in England and in some of the American states, the rigorous and just rule at common law had been modified to a greater or less extent.

The Missouri Statutes of 1868, 1869, and 1874 are in accord. Thus the act of 1868 authorized the transfer of a warehouse receipt by indorsement thereon, whereby the transferee is to be deemed the owner of the goods, "*so far as to give validity to any pledge, lien, or transfer made,*" etc.: *provided,* that if the words "non-negotiable" were written or stamped on said warehouse receipts, etc., the act would not apply. This statute, with the exception in the proviso mentioned, permitted a transfer by indorsement of a warehouse receipt; *so far as to give validity to the pledge, lien, and transfer.* Prior to that act, as had been decided by the Missouri supreme court in the two cases *supra,* no such pledge could be made. The act of 1868 authorized the pledge in the manner stated to the extent of the factor's lien. Section 6, Act of March 13, 1868.

But it is contended that section 10 of said act gives a broader effect to such transfers, for it provides that ware-

house receipts, etc., "shall be negotiable in blank, or by special indorsement, in the same manner and to the same extent as bills of exchange and promissory notes now are." Was this section designed to cut off all equities between consignor and consignee, when a transfer of the receipt had been made to an innocent transferee for value? If so, were demand on the principal and notice to the indorser required to hold the parties to said receipt personally liable for property for an undetermined value, not like bills of exchange, etc.? Or was it designed to effect merely a valid pledge of the property, through indorsement of the receipt, without a personal liability on the part of the warehouseman for more than the specific property?

It is obvious that if the warehouse receipt was to operate as a bill of exchange the primary element of such a bill would be eliminated, viz., *a sum certain;* and also demand on the warehouseman at maturity would be required, with due notice, as by the law merchant. But the warehouse receipt may not fix a day certain on which delivery is to be made, nor does it contain any other of the essential requisites of a bill of exchange, whereby the law merchant can fasten on the parties to the paper their respective liabilities. The original contract was between consignor and consignee. The latter received the goods to sell for the benefit of the consignor. Could he, without consent of the consignor, place the same in a warehouse, and then turn over the warehouse receipt to some other person, and thus convert a contract resting in personal confidence and trust for the sale of the property into a general authority to any and every one to whom the receipt might be pledged, or who thus gets manual or symbolical possession of the property, to sell the same, with or without accounting to the consignor for the proceeds thereof? To so hold would be subversive, not only of all rights of property, but of all laws of contract between consignor and consignee. Does, then, the clause in the statute as to *negotiability* imply or require any such overturn of *elemental* principles? Was the contract between consignor and consignee assigned, as well

as rights of property? As will be seen hereafter the United States supreme court has determined the true meaning of the term employed in this and like statutes.

The act of 1868 (Missouri Statutes) denounces penalties against a factor who does not account for or pay over to his principal the amount received on the negotiation, pledge, etc., of goods consigned. Does that imply that a negotiation or pledge may be made by the factor for more than his lien, he alone to be answerable for the surplus, and that the pledgee may not be also held for the surplus? Is not that section intended not to exonerate the indorser or transferee from liability to the consignor, but to add to the consignor's security those penal provisions? The Missouri act, March 4, 1869, repeats the provisions of the act of 1868, *supra,* as to *negotiability,* and in section 2 declares that the indorsee of the receipt shall be deemed the owner of the goods, "so far as to give validity to any pledge, lien," etc., "*as on the faith thereof,*" with the same proviso as in the former act. The repeal of certain sections in the former act does not affect the present inquiry further than is needed to interpret the force and effect of the terms, "as on the faith thereof." Does the insertion of these words *enlarge* or *restrict* the rights of the indorsee? By the prior statute the simple indorsement caused the indorsee of the receipt to be deemed the owner, so far as to give validity, etc.; but it must have appeared to the legislature that such a provision left the door to fraud wide open, and hence in the act of 1869 the relationship of the indorsee seeking the benefit of the transfer was confined to a *bona fide* indorsee; or, in the language of the act, to a transfer, pledge, etc., made "on the faith" of the warehouse receipt. Such being the condition of the statutes, the act of March 28, 1874, was passed, evidently designed to punish fraudulent factors and warehousemen, restricting their negogiations and pledges of bills of lading and warehouse receipts to cases where the owner or consignor gives *written authority* therefor; whence the proviso to the act, which is in the following words: "*Provided,* that nothing herein shall be construed to prevent such consignee or other person lawfully possessed of such bill of

lading or warehouse receipt from pledging the same *to the extent of raising sufficient means thereby to pay charges for storage and shipment or advances drawn for on such property by the owner or consignor thereof, and a draft or order by the owner or consignor thereof; and a draft or order by such owner or consignor for advances shall be held and taken to be 'written authority,'* within the meaning of this section, for the hypothecation of such bill of lading or warehouse receipt to the extent, and only to the extent, of raising the means to meet such draft, and to pay such freight and storage." Under this penal act the only question presented is whether a pledgee is deprived of his rights as such pursuant to prior acts, unless written authority from the *owner or consignor* by draft, order, or otherwise is presented to him at the time of pledge made; or whether the pledge made without such written authority merely imposes upon the factor the penalties denounced, without invalidating the transfer.

It cannot be disputed, in the light of the decisions *supra*, 18 Mo. Rep., (which were in full accord with settled principles,) that a factor could not pledge for his debt the goods of the principal. Such being the received doctrine in England and America, an act of the British parliament was needed to modify the rule as to Great Britain, and acts by several states in this country more, or less in accord with the acts of George IV. The first and most important inquiry is as to the force of the statute concerning the negotiability of warehouse receipts, etc.

In the case of *Shaw v. R. Co.* 101 U. S. 557, the doctrines involved were fully considered; the statutes under consideration by that court being those of Missouri and Pennsylvania, which were, in this respect, declared to be alike. After a very full and clear exposition of the question concerning negotiability as applied to bills of exchange and bills of lading, respectively, the court said: "It cannot be, therefore, that the statute which made them (bills of lading, etc.) negotiable by indorsement and delivery, or negotiable *in the same manner* as bills of exchange and promissory notes are negotiable, intended to change wholly their character, put them *in all*

*respects* on the footing of instruments which are the representatives of money, and charge the negotiation of them with all the consequences which usually attend or follow the negotiation of bills and notes. Some of these consequences would be very strange, if not impossible; such as the liability of indorsers, the duty of demand *ad diem*, notice of non-delivery by the carrier, etc., or the loss of the owner's property by the fraudulent assignment of a thief. If these were intended, surely the statute would have said something more than merely make them negotiable by indorsement. No statute is to be construed as altering the common law further than its words import."

This case is not only very instructive, but authoritative on this court; certainly, in the absence of any interpretation of the Missouri statute by the supreme court of Missouri. The general doctrine as to consignor and consignee, when advances have been made or not made, are fully stated in the opinions of the United States supreme court, 14 Pet. 479, (*Brown* v. *McGraw*,) and in 11 How. 209, (*Warner* v. *Martin*.)

In 23 Wall. 35, (*U. S.* v. *Villanoga*,) the extent of a factor's interest and control of the property is stated.

Another question arises concerning the right of the consignor to maintain his action against the factor or his assignee for the value of the goods, or their commission, when advances, charges, etc., exist, without first tendering the amount of said advances. On this point the authorities are not in accord. Some hold that the consignor may sue for the full value of the goods, as in trover, and the defendant may recoup as to advances and charges, whereby the consignor would recover the surplus to which he is entitled and no more. Other authorities hold that inasmuch as the assignee of the factor holds the property under a lien for advances, etc., the consignor has no right of action until the lien is first removed, except as in *assumpsit* for the surplus. It is useless to review these differing authorities in the light of technical rules, which are now to a large extent obsolete. It is clear that the factor has, in Missouri, a right to pledge the goods consigned to the extent of the advances and charges thereon,

and we now hold that he can pledge them no further. If, then, such be his legal right, a suit cannot be maintained on any recognized principle, either against the factor or his pledgee, for the conversion of said goods, unless, after tender and demand, a refusal is made.

Prior to the Missouri Statutes, the United States supreme court declared, in *Warner* v. *Martin, supra,* that whilst a factor could not pledge for a debt of his own, and if so pledged the consignor could recover in trover against the pledgee without tender either to the pledgee or factor what might be due to either of them, because the pledge was tortious; still a factor who had a lien on the goods could deliver them to a third person as security to the extent of his lien, in which case a tender of the amount of the lien due the factor must be made before recovery could be had. The opinion of the United States supreme court in that case throws much light on this controversy; for, if the contention is that under the Missouri Statutes a factor may pledge his principal's goods on the faith of a warehouse receipt, irrespective of the amount of his advances and charges,—that is, for any amount he can borrow on the faith of a warehouse receipt,—it becomes important to ascertain if such a doctrine, subversive of the ordinary rights of principal and agent, or consignor and consignee, has any sanction either in statute or otherwise.

In *Warner* v. *Martin, supra,* a similar view seems to have been urged, and reliance was had on the act of Geo. IV., c. 94, (1825,) the English factor's act. The United States supreme court, having before it both the English and the New York acts, said: "The third section of that (the New York) act provides for those cases where the ownership by the factor of goods which he contracts to sell shall be said to exist, to give protection to purchasers against any claim of the factor's principal. [This is a contract of sale.] It is when he contracts for any money advanced, or for any negotiable instrument or other obligations in writing given for merchandise upon the faith that the factor is the owner of it. The concluding words of the section are, 'given by such other

person upon the faith thereof.' Three misconstructions of that act have been prevalent, but they have been corrected by the courts of New York. We concur with them fully. One was that the statute altered the common law so as to give validity to a sale made by the factor for an antecedent debt due by him to the person with whom he contracts; another, that the statute gave to a purchaser protection whether he knew or not that the goods which the factor contracted to sell him were not the factor's, and belonged to the principal; and the other, that the concluding words, 'upon the faith thereof,' related to the advance made upon the goods, and not to the property which the factor had in them."

Without pursuing these inquiries further, it is held that a factor may, under the Missouri Statutes, pledge his consignor's goods to the extent of advances and charges thereon; the advances to be evidenced as required, and to no greater extent. It may be urged that a practical difficulty will arise in ascertaining the correct amount of advances and charges; but if that be so, the consignor may reply with greater force that his property ought not to be pledged for more than the factor's lien thereon. The pledgee is not obliged to loan money and receive the pledge as collateral. If he is willing to lend to the factor he can receive as collateral a warehouse receipt to the extent that the factor has a lien on the goods represented; in other words, the factor can pledge what belongs to him,—his lien,—and not his principal's interests or rights of property. This may be questionable legislation, inasmuch as it enables the pledgee to sell the goods if not redeemed, instead of the agent, in whose personal skill and judgment alone the consignor confided.

If there were advances and charges existing for which the property was pledged, the plaintiffs, to recover in trover or for conversion, should have first tendered the amount thereof. In no event are they entitled to more than the surplus after the lien is discharged.

Here arises the difficulty under which courts and legislatures have labored with respect to the common-law rule and needed modifications thereof. A consignor selects his con-

signee, on whose skill and personal integrity he relies for a judicious sale of the property consigned. If the consignee advances on the shipment, at the close of the transaction the consignor is entitled to receive the proceeds of the sale, less advances, charges, and commissions. But if the consignee is permitted to pledge the consignor's property to the amount of advances and charges, and the pledgee controls the sale of the property,—it may be at forced sale, irrespective of the condition of the market, etc.,—the consignor's right may be sacrificed, his reliance on the personal judgment and skill of his consignee set at naught, and another and injurious mode of disposing of his property pursued—a mode never contemplated by him. Still, if such a mode is lawful, he is compelled to submit thereto. How, then, shall he be bound, as in favor of the pledgee, for advances? or, in other words, to what evidence of advances made or to be made shall the pledgee be confined? The act of 1874, *supra*, gives the rule. There must be written authority for advances, and a draft or order drawn by the consignor against the shipment is to be considered such written authority. It is thus under statutory safeguards that the consignor may make his shipments. He knows that his consignee may pledge for charges, but cannot pledge for advances without written authority, as by draft or order. Hence, justice is wrought. Unless he receives an advance, or by written authority orders such to be made, his property cannot be pledged therefor. It is very easy for the pledgee to call for the written authority, such as the statute requires, and if he takes a pledge from the factor for supposed advances, when no written authority exists, he cannot hold the property therefor against the consignor's rights.

The decisions in Wisconsin and elsewhere, looking to different conclusions from those reached by this court, have received careful consideration. There is nothing in the Missouri Statutes to justify a factor's pledge for more than advances and charges, and the evidence of advances is confined to written authority therefor. A factor cannot sell or pledge for his individual debt, but he can sell to pay such advances and charges, or pledge therefor, or sell in the usual course of

business, irrespective of advances and charges. The protection of the consignor requires the enforcement of the statutory rules, which, as existing, are a relaxation of the common-law doctrines, and ought not to be construed to extend beyond their clear import.

If a stranger will take a pledge of goods from a factor without inquiry, the consignor is not to suffer. Whether he knows or not that the person from whom he takes the pledge is a mere factor does not change the rule. A consignor's property cannot be taken from him without his consent. A pledgee is bound, at his peril, to inform himself of the facts. The rule as to *sales* in the ordinary course of business is one thing, and as to *pledges* entirely different. This is fully stated in the case of *Shaw* v. *Railroad Co., supra.* The difficulty, as heretofore intimated, arises from the failure of defendant to aver the amount of advances and charges for which the goods were pledged. The answer states that there were advances and charges, and that, for the purpose of raising means to pay the same, the warehouse receipts were pledged, and that defendant loaned "on the faith thereof" $10,555.31. If it be meant that the sum loaned was the amount of charges and advances, the defence is good, in the absence of a tender thereof; but if, on the other hand, it is meant that inasmuch as there was some amount due, however small, the factor could pledge the property for any loan he might obtain thereon, however large, and hold the property against the consignor generally, that special defence would be bad.

The only difference between the two special defences seems to be that in one it is averred that the defendant believed the pledgor to be the owner, and in the other no such averment is made. As already stated, such a difference avails nothing. The defendant, in his argument, says: "The question presented for the consideration of the court is this: If a factor pledges the bill of lading or warehouse receipt, having no reason to doubt that such factor is the true owner of the goods, can the consignor recover the goods without first offering to return the money borrowed?" It will be apparent, from what

has heretofore been observed, that the proper answer to such question, thus broadly stated, would be in the affirmative. The factor cannot pledge the goods of his principal, except to the amount and in the manner stated. He has no authority, either at common law or by statute, to borrow money generally on the pledge of the warehouse receipt; nor can the pledgee protect himself against the demand of the consignor, except to the extent of such advances and charges. The pledgee may receive a transfer of the factor's lien, and nothing more. Hence, the answer being that advances and charges were due, (the amount not stated,) and that a loan was made to the factor, irrespective of the amount of said advances and charges, nothing definite is presented, unless, as stated in argument, that there was a valid pledge for the amount loaned on the faith of the receipt. Such a defence is not valid, and the demurrer thereto will be sustained.

The same ruling will be had as to the second special defence. If, however, the defence, if amended, should show that defendant was pledgee for advances and charges within the term of the Missouri Statutes, and that no payment or tender thereof was made before suit brought, then said defence as to this form of action will be valid. In other words, a pledgee can maintain his pledge only for what the statute provides, and in the manner provided. If he brings himself within the terms of the statute, then as lienor he is not a tort-feasor, or guilty of conversion by refusing to surrender the property until the lien is discharged.

Demurrer sustained.