Davis, J.,
delivered the opinion of the court:
The defendants move to dismiss the petition in this case on the ground that the court is without jurisdiction under section 4 of the Bowman Act, which requires proof of the loyalty of the person from whom the supplies or stores were taken.
The father of the claimants died in 1853, leaving a last will and testament, in which William L. Pitts was named as executor. He did not finally settle his accounts until after the alleged taking, and it is contended that he, as executor and not the claimants as heirs of their father, is the person whose loyalty should be established. The case of Newman, administrator, decided at this term, is conclusive of the issue presented unless there be, as urged by the claimants, a vital distinction between the position and rights in the law of an executor under the code of Louisiana and one performing his duties in States where the doctrine and theories of the common law prevail.
In all States not governed by the principles of the civil law the executor, or administrator, is in law and equity the owner of personal property of the testator or intestate. (Carroll’s Case, 13 Wall., 151; Villalonga’s Case, 23 Wall., 35.) He has the rights therein that the deceased had when living; he may, without violence, enter the house of the heir to remove the goods of the testator or intestate; he has absolute power of disposal over the whole personal effects ; he may sell a chattel specifically bequeathed, and he has been permitted to mortgage the assets of the estate. The title given by him is, in the absence of fraud and covin, complete and valid. In fact, he is as to third persons the owner of the personal estate of his testator or intestate, but is liable for the debts only so far as the estate is sufficient to pay them. (Williams on Executors, 925-927, 932, 934-936, 939-943.)
The appointment of executors is foreign to the early principles of the Roman law, the foundation of the French codes from which the law of Louisiana is taken. The civil law looked primarily to the legal heirs, to the family of the deceased, and while greater liberty of disposal has been from time to' time grafted upon it in favor of the testator, he is yet hemmed in by restrictions unknown to doctrines prevailing in States where justice is administered upon principles adopted from the law of England. Under the civil law the heir is the natural executor *284 or administrator, if suck words can be used when considering that system. That is, the heir is the executor in the sense that he is to carry out, to execute, the provisions of the will, not in the technical meaning of the common-law definition. The heir, if he do not refuse the succession, becomes the owner of all the testator’s assests and becomes bound for all his debts regardless of the sufficiency of tbe estate. He steps into the shoes of the deceased in a manner unknown to the common law, and an anheritance maj7 to him become a very serious, onerous, and expensive matter, only to be accepted from considerations of family honor, and which, once assumed, he can never cast off, even if it involve him in financial ruin. This responsibility and the right to any benefit which might result the law placed in the legal heir of the deceased, following thus consistently its theory of family right and family responsibility. In Eome few examples of the appointment of executors are found, nor was there any rule establishing in general the use of executors charged with the entire execution of the testament. The general rule of the civil law is that—
“ The dead man gives seizin to the living, his next of kin that is capable of succeeding to him; that is to say, that the inheritance accrues to him with all its rights at the moment of the death of the relation to whom he succeeds, which has this effect, that if the said heir should chance to die without knowing that the said succession was fallen to him he would transmit to his heirs in the same manner as if .he had declared his acceptance and take possession of it.”
Gradually as a testator desired to secure the fulfillment of some particular wish which he did not dare or did not care to commit to the charge of the heir a custom crept in, by way of exception to the general rule, of naming an executor to perform some specific duty without, however, interfering with or changing the legal status of the heir to the general estate or his relations to it. This custom has greatly grown, and has received increased recognition and protection of late years, and even so long ago as the seventeenth century executors in France were sometimes charged with the entire execution of the testament and all movabie goods were with approval placed in their hands.
Domat, in his work on the civil law, says, as to the use of executors of testaments:
“ Seeing there are often dispositions in testaments, the execution of which depends wholly on the integrity of the testa *285 mentary heirs, and that many heirs fail in the performance thereof, it is free for testators to commit to other persons the execution of their dispositions, which they are not willing should depend altogether on their testamentary heirs; and the persons to whom the testators give this power are called executors of testaments.” (§ 3334.)
The English editor comments upon this paragraph as follows :
“ The character of executor, as described in this article, is more applicable with us in England to what we call an overseer of a will than to an executor, for some testators, having named executors of their wills, do also appoint some persons whom they have a more special trust and confidence in to be overseers of their wills, that is, to see to the due performance and execution of all the several dispositions in their wills.”
The Louisiana code proceeds upon the theory of the civil law. It defines succession as the transmission of the rights and obligations of the deceased to his heirs, and as also signifying the right by which the heir can take possession of the estate of the deceased; nor does the law take into consideration the origin or the nature of the property in order to regulate the succession. (Civil Code Louisiana, § § 867, 869, 881.) Succession is acquired by the heir instantly upon the death of the ancestor (§ 935), and by operation of law he instantly is vested with right of possession (§ § 936,937), and may begin or prosecute all actions, including possessory ones, which the deceased might have instituted, or did institute, during his lifetime.
Such are briefly the general provisions as to the rights of the legal heirs, whether named in the will or selected by operation of law (§ 9.34), and no recognition is made in this division of the code of the existence of any other person possibly having a title in or to the property, whether real or personal, antagonistic or paramount to that of the heir.
In another chapter we find that the execution of the dispositions contained in a testament is u usually” 'confided to one or more executors (§ 1651), to whom the testator may give the “ seizin ” of the whole of the succession or only of a certain indicated portion ; but this “ seizin ” can continue only a year and a day from the date of testator’s death (§ 1653); nor can the executor obtain it otherwise than by express provision in the will, for if an executor be simply named in that instrument *286 without specification of particular powers “ his functions are confined to see to the execution of the legacies contained in the will, and to cause the inventory and other conservatory acts of the property of the succession to be made.’’ (§ 1653.) In default of sufficient assets to pay the debts and legacies the executor may be authorized by the courts to sell the movables of the estate, and if they be inadequate then the immovables to an amount sufficient to satisfy the debts and legacies (§ 1661); except in this case he cannot sell immovables (§ 1662), and in any event the sale must proceed as in the case of curators of vacant successions. The heir can at any time take the seizin from the executor upon tender of a sum sufficient to pay the legacies (§ 1664), and the executor’s office ends at the close of a year unless because of absent heirs the court continues him longer therein. (§ § 1666 and 1667.)
The will of Lambeth, the father of the claimants, produced at the argument, contains numerous provisions and bequests, and while it charges the executor with duties apparently inconsistent with the theory that he was to remain in office but one year, there is no express right to what the code calls “seizin ” vested in him.
The will directs the payment of debts and collection of credits; provides one small annuity and a legacy; devises one plantation to his nieces, subject to a certain debt; commits his children, the claimants herein, to the guardianship of his sister, and authorizes his executor “ to make ample provision for the support of these children and their education during their minority,” and expresses the desire that when they arrive at “ marriageable state * * * the estate which they may possess may be secured to them by all the formalities which the laws of the State in which they may Jive will require.” Other provisions follow, not important to the consideration of this case, and finally the executor is directed as to the sale of the crops. It is admitted that the daughters were of marriageable age, as fixed in the code of Louisiana, at the time the property was taken. The claimants contend that the functions of the executor under this instrument were confined to paying the debts and legacies, making an inventory and to doing other conservatory acts in respect of the succession, as provided in the code. That having performed these duties he *287 was without further power, and his relations to the estate thenceforward became simply those of a custodian.
The petition alleges that claimants are tbe only heirs at law of Lambeth, whose “ property and estate was left in the hands of William L. Pitts, testamentary executor; ” that at the breaking out of the war claimants were minors residing in Missouri, and the estate “ was in ^the care and management of said Pitts” until 1866, some three years after the alleged taking of the stores and supplies whose value is now sought to be recovered.
The law of Louisiana must govern this case (Taylor v. Bemiss, 110 U. S. R., 42), and the Supreme Court of that State has upon numerous occasions construed the sectious of the code already briefly epitomized, and which do not differ in substance in the several codifications made at different times before and since the date of the death of claimants’ testator. From these cases we select a few as sufficiently indicating the opinion of the highest tribunal of that State upon the rights, duties, and title of such officers. In Dupuy's Succession the court said (4 La. Ann., 571):
“ The appointment of an executor with the seizin is not, as alleged, a substantive testamentary disposition, independent of any other. The functions of a testamentary executor are a mandate, differing from other mandates in this only, that it begins at the death of the principal when all other mandates end.' That mandate, under our laws, where it is not enlarged ■ by the will, is limited to the execution of the legacies contained in the will and to the payment of the debts, and the powers which it gives are to be strictly construed. (Delisle Com. on Art. 1024, Code Nap.) There being no testamentary dispositions and no debts to pay, in this case the appointment of the defendant as executor has become inoperative. It is well settled that the seizin of the executor is a fiction of law which does not interfere with the legal possession of the heir.”
This case was afterwards quoted from and approved by the same court, when they further said (Succession of Walker, 32 La. Ann., 321):
“ The duties and functions of an executor of a will are imported by his title. He is to execute the will, paying the debts of his testator and his legacies, and carrying' into effect his testamentary dispositions. If there be no debts or legacies to pay — in a word, nothing to do, nothing to execute — it would seem he is without function, and his appointment is inoperative.”
*288 The French law has been interpreted in the same way:
“ The mandate given by the testator to the testamentary executor is obligatory upon the heirs only so far as there may be legatees having interest in its fulfillment; when its fulfillment can be of no utility to the legatees, then the heirs whose rights of property it limits may end it at their will.” (T3 Merlin Bep. verbo Heritiers.)
In Le Page against The New Orleans Gas-light and Banking Company (7 Robinson, La., 185), claimants, as heirs of the deceased, sought to obtain the transfer by the defendant corporation of certain stock held in his name on their books; to this defendant objected that the heirs should first obtain recognition as such from a court of probate, practically as required in States governed by the principles of the common law. The court overruled this objection, holding:
“ By express provisions of our law the lawful heir of a deceased person acquires the succession immediately after the death of the latter; and this right is vested in the heir by the operation of the law alone, before he has taken any step to put himself in possession, “ La'mort saisit le vifp and one of the effects of this right is to authorize the heir to institute all the actions which the deceased had a right to institute, and to prosecute those already commenced; for the heir, says the law, represents the deceased in everything, and is of full right in his place as well for his rights as his obligations. * * * There was perhaps no necessity for instituting the present action, as from the laws above referred to it is clear that the plaintiffs, having acquired the succession of the deceased immediately after his death, and by the operation of the law alone, were vested with the right of considering the stock by them claimed as their property, and of disposing of the same as their own from the moment that the succession was opeued. If so, what transfer do they want from the banks f Their title to the stock is complete.”
In the light of the theory of the civil law, of the provisions of the code of Louisiana, and of the decisions of the highest tribunal of that State, we are of the opinion that the executor in this case had not at the time of seizure such interest in the property taken as to compel proof of his loyalty under the provisions of the Bowman Act.
The motion to dismiss is overruled.