# ALLEN *v.* ST. LOUIS BANK.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

Argued April 9, 1836. — Decided January 10, 1887.

In an action in which a jury has been waived in writing, and the judgment of the Circuit Court is for more than $5000, the question whether the facts set forth in a special finding of the court are sufficient in law to support the judgment may be reviewed on writ of error, without any bill of exceptions or certificate of division of opinion.

At common law, a factor has no power to pledge, whether he is intrusted with the possession of the goods, or with the bill of lading or other symbol of property.

The statute of Missouri of March 4, 1869, gives no validity to a transfer, without indorsement in writing, of a bill of lading or warehouse receipt.

The statute of Missouri of March 28, 1874, making the pledge of goods by a factor, without the written authority of the owner, a criminal offence, does not render such a pledge valid as between the owner and the pledgee.

A usage of trade for banks to take pledges from factors, as security for the payment of the general balance of account between them, of goods known to be held by them as factors, is unlawful.

An unauthorized pledge by a factor, of goods owned by a partnership of which he is a member, to secure the payment of his own debt to one who knows him as a factor only, is invalid against the partnership.

---

If a factor, to whom the owner of goods has made a negotiable promissory note and consigned the goods under an agreement between them that the proceeds of the goods when sold shall be applied to the payment of the note, indorses the note and pledges the goods to secure the payment of advances made to him by one who knows him to be a factor and to hold the goods as such, the pledgee is bound to apply the proceeds of the goods to the payment of the note, and the maker may set up this obligation in defence of an action by the pledgee on the note.

This court, on reversing a judgment of the Circuit Court for the plaintiff on a special finding which ascertains all the facts of the case, will order judgment for the defendant without further trial.

THE original action was brought by the St. Louis National Bank against Augusta B. Allen and her daughter on a promissory note for $3750, with interest at the rate of ten per cent. yearly, made by the defendants May 10, 1878, and payable December 20, 1878, to the order of J. H. Dowell & Co., and by them indorsed to the plaintiff.

The answer alleged that the plaintiff was bound to apply in payment of the note the proceeds of certain cotton pledged to the plaintiff by the payees; and set out the facts attending the making and indorsement of the note and the pledge of the cotton, substantially as afterwards found by the court and stated below, except in the following respects: The answer alleged that the plaintiff took the note and the cotton with full notice of the agreement and understanding between the makers and the payees, and was not a holder of the note in good faith and for value, but took it as collateral security for preëxisting debts of the payees to the plaintiff. The answer contained no statement of the general course of dealing between the payees and the plaintiff, and no mention of any usage of trade. As a further defence, the answer alleged that the note had been paid and satisfied.

The plaintiff filed a replication, denying all the allegations of the answer. A jury was duly waived in writing, and the case was tried by the court, which made this special finding of facts:

"1st. The promissory note set forth in the petition was made by the defendants, and delivered by them to J. H. Dowell for J. H. Dowell & Co., the said J. H. Dowell being

the active partner of J. H. Dowell & Co., and as such having the control and management of their business as cotton factors; and such note was so made under the circumstances and for the purposes hereinafter stated. Said J. H. Dowell procured said note before its maturity to be discounted by the plaintiff, who paid to him the amount of said note less the usual discount, and thereupon the said J. H. Dowell, in the name of J. H. Dowell & Co., indorsed and delivered said note to said plaintiff, by whom it is still held. Said note has not been paid, unless the facts hereinafter found amount to or operate as a payment thereof. The amount due on said note with interest to this time, if the plaintiff is entitled to recover thereon, is the sum of $5377.08. The plaintiff is the *bona fide* holder of the note sued on, for value, before maturity, without notice of any of the defences herein claimed, unless notice is to be implied from the facts hereinafter set forth.

"2d. At the date of said note and for several years before, and until March, 1879, J. H. Dowell was a cotton factor at St. Louis, Mo., doing business as the active member of J. H. Dowell & Co., and as such having the control and management of their business as cotton factors, receiving consignments of cotton for sale on commission from planters and others, and making advances during the pending season to their consignors of supplies and cash, to be reimbursed out of the proceeds of the cotton crops of said consignors when received and sold. Said J. H. Dowell and the defendants were also partners in the working of a cotton plantation in Clover Bend, Arkansas, under the firm name and style of Allen & Dowell; and said J. H. Dowell & Co. of St. Louis acted as the factors of said Allen & Dowell, receiving the cotton raised by them each year and disposing of it at St. Louis, and furnishing each season the supplies needed by Allen & Dowell for carrying on the plantation, and charging such advances to Allen & Dowell in account, and crediting them on said account with the proceeds of the cotton when received and sold or disposed of, the accounts being kept with Allen & Dowell in the same manner as with other consignors of cotton.

"3d. The note sued on was made and delivered to J. H.

Dowell, the active member of the firm aforesaid, under the name of J. H. Dowell & Co., by the defendants, at or about its date, at the request of said J. H. Dowell, for the purpose of being used by him and for his accommodation, to enable him to raise funds to furnish the necessary supplies to Allen & Dowell for operating said plantation during the season of 1878, and with the understanding between J. H. Dowell and the defendants (but not with any understanding or knowledge of the plaintiff) that it should be taken up and paid by J. H. Dowell at maturity out of the proceeds of the cotton crop of Allen & Dowell for that year, when received and sold by J. H. Dowell & Co. There was no other or further consideration as between J. H. Dowell and the defendants for the making of said note. The amount of said note was credited by J. H. Dowell for J. H. Dowell & Co. to Allen & Dowell at its date on account, and at its maturity was charged to Allen & Dowell on said account as though taken up and paid by J. H. Dowell & Co. But it was not in fact paid or taken up. The proceeds of the cotton crop of Allen & Dowell for 1878, consigned to J. H. Dowell & Co., were more than sufficient to pay and satisfy the said note, together with all other advances and charges by J. H. Dowell & Co. to Allen & Dowell, if such proceeds had been applied to the payment of said note. The balance in favor of Allen & Dowell on said account was never paid or settled by J. H. Dowell, and the partnership accounts between the partners composing the firm of Allen & Dowell have never been adjusted and settled.

"4th. During the year 1878, and until March, 1879, J. H. Dowell & Co. kept their bank deposit account with the plaintiff and were very large borrowers of money from said bank. During the said period the following transactions were had between J. H. Dowell & Co. and the said bank, concerning all the cotton consigned to J. H. Dowell & Co., including the cotton of Allen & Dowell consigned to J. H. Dowell & Co. The mode of such transactions was as follows: The cotton being shipped to J. H. Dowell and Co. by railroad, the bills of lading therefor as soon as received by J. H. Dowell & Co. were delivered to the bank, which thereupon gave J. H. Dowell &

Co. credit in their deposit account for an amount equal in the aggregate to $40 for each bale, represented by such bill of lading, taking J. H. Dowell & Co.'s note for said amount, payable on demand with interest. The amount so credited to J. H. Dowell & Co. in their account would be subject to their check when and so far as the balance of account was after such credit in their favor; but their account was sometimes largely overdrawn, as was the case with many of the customers or dealers in St. Louis with the bank. When the cotton represented by such bills of lading arrived in St. Louis, it was delivered by the railroad company transporting it to a cotton warehousing company, which, on receipt thereof, issued therefor its warehouse receipts, acknowledging the receipt of the cotton described by number of bales and marks thereof, and undertaking to deliver said cotton to the bearer of the receipts on demand. Said receipts were then delivered to the bank in exchange for the bills of lading, which were surrendered and cancelled.

"It is not shown whether or not the bills of lading or the warehouse receipts or any of them were indorsed in writing by J. H. Dowell & Co. or by any one, when transferred to the bank, there being no evidence on this specific matter.

"The bank knew that the business of J. H. Dowell & Co. was that of factors, and understood that the cotton represented by the bills of lading and warehouse receipts, as aforesaid, was held by J. H. Dowell & Co. as factors, and also knew that J. H. Dowell and the defendants were jointly interested in owning and operating the plantation in the State of Arkansas. The bank did not know and made no inquiry as to the ownership of any of the cotton, nor as to the particular dealings of J. H. Dowell & Co. with such owners, nor as to the state of accounts between them.

"It does not appear that cotton received by J. H. Dowell & Co. from different consignors was kept distinct or separate in the transactions above referred to as made with the bank, nor does it appear what particular transaction included the cotton of Allen & Dowell or any part of it. During the period said J. H. Dowell & Co. by J. H. Dowell turned over to the

bank, in the manner and for the purposes above specified, all the cotton consigned to said firm, including that of Allen & Dowell.

" 5th. The cotton represented by the bills of lading and warehouse receipts, in the transactions with the bank aforesaid, was sold in the manner following : Sales were negotiated by J. H. Dowell & Co. by means of samples, and they agreed with the purchasers as to all the terms of sale, including prices. When the agreement of sale was thus made, the purchaser uniformly paid the entire purchase money to the bank, and on such payment the bank delivered to the purchaser the warehouse receipt held by it, on the presentation of which to the cotton warehouse the cotton would be delivered. The entire amount received by the bank for the cotton was credited to J. H. Dowell & Co. in their deposit account, and at the same time, and as part of the same transaction, J. H. Dowell & Co. were required to and did draw and deliver to the bank their check on the same account for the amount of their demand notes to the bank, and thereby take up such notes.

" In March, 1879, J. H. Dowell suddenly died, and his estate proved insolvent. J. H. Dowell & Co.'s account with the bank was then overdrawn, and they were indebted to the bank.

" The bank at the time of said Dowell's death held about 1000 bales of cotton through its transactions, as aforesaid, with J. H. Dowell & Co., some of which were replevied, and some by the bank sold and the proceeds applied to the payment *pro tanto* of the said indebtedness of J. H. Dowell & Co. But it does not appear, from any testimony in the case, that any part of the cotton on hand at the time of the death of Dowell was the Allen & Dowell cotton. All the cotton shipped by Allen & Dowell to J. H. Dowell & Co. was sold and disposed of as hereinbefore stated and before the death of J. H. Dowell. The particular sales, including said cotton of Allen & Dowell, do not appear. The defendants had no notice of the non-payment of the note sued on until after Dowell's death.

" 6th. The borrowing of money from the bank by J. H. Dowell & Co., the making of notes therefor, and the transactions, as aforesaid, between J, H. Dowell & Co. and the bank

concerning the bills of lading and the warehouse receipts and the final distribution of the cotton and its proceeds, as aforesaid, were all according to the general usage of trade between banks and cotton factors at St. Louis, Missouri, where the transactions took place.

"7th. At the time that the note in controversy was made, another of the same kind was made by and to the same parties and as a part of the same transactions, which note was at the same time discounted by the bank in the same way, and was at its maturity paid to the bank by J. H. Dowell & Co., and charged to Allen & Dowell in account with J. H. Dowell & Co. against the proceeds of the cotton crop of Allen & Dowell in 1878."

It was also stated, in the finding of facts, that at the time of these transactions certain statutes of Missouri were in force, which are copied in the margin.[1]

---

[1] The statute of March 4, 1869, contains the following provisions:

"SECTION 1. All receipts issued or given by any warehouseman or other person or firm, and all bills of lading, transportation receipts and contracts of affreightment, issued or given by any person, boat, railroad or transportation or transfer company, for goods, wares, merchandise, grain, flour or other produce, shall be and are hereby made negotiable by written indorsement thereon and delivery in the same manner as bills of exchange and promissory notes; and no printed or written conditions, clauses or provisions, inserted in or attached to any such receipts, bills of lading or contracts, shall in any manner limit the negotiability or affect any negotiations thereof, nor in any manner impair the rights and duties of the parties thereto, or persons interested therein; and every such conditions, clauses or provisions, purporting to limit or affect the rights, duties or liabilities created or declared in this act, shall be void and of no force or effect.

"SEC. 2. Warehouse receipts given by any warehouseman, wharfinger, or other person or firm, for any goods, wares, merchandise, grain, flour, or other produce or commodity, stored or deposited, and all bills of lading and transportation receipts of every kind, given by any carrier, boat, vessel, railroad, transportation or transfer company, may be transferred by indorsement in writing thereon and the delivery thereof so indorsed; and any and all persons to whom the same may be transferred shall be deemed and held to be the owner of such goods, wares, merchandise, grain, flour, or other produce or commodity, so far as to give validity to any pledge, lien or transfer, given, made or created thereby, as on the faith thereof; and no property so stored or deposited, as specified in such bills of lading or receipts, shall be delivered, except on surrender and cancellation of such

### Statement of Facts.

The Circuit Judge and the District Judge certified that they were opposed in opinion upon the following questions:

"1st. Whether the transactions between the plaintiff and J. H. Dowell & Co. concerning the bills of lading, warehouse receipts, and the sales of cotton, and application of the proceeds, were valid and effectual in favor of the plaintiff and as against the defendants, at common law.

"2d. Whether said transactions were or not valid in favor of the plaintiff as against the defendants, by virtue of the statutes of Missouri in respect to bills of lading and warehouse receipts and the transfer or negotiability of such instruments, heretofore set forth.

"3d. Whether such transactions were valid as to the plaintiff against the defendants, by reason of being in conformity to the usage and custom of bankers and factors at St. Louis.

---

receipts and bills of lading; provided, however, that all such receipts and bills of lading, which shall have the words 'not negotiable' plainly written or stamped on the face thereof, shall be exempt from the provisions of this act." Missouri Laws, 1869, p. 91.

The statute of March 28, 1874, amends § 12 of the statute of March 10, 1868, so as to read as follows:

"Section 12. If any commission merchant, agent or other person storing or shipping any grain, flour, or other produce or commodity, or any person to whom any such property is consigned, and who shall come in possession of a bill of lading or warehouse receipt for such property, for or on account of another person or other persons, shall hypothecate, negotiate or pledge such bill of lading or warehouse receipt, without the written authority therefor of the owner or consignor of such property; or if, having so disposed of such bill of lading or warehouse receipt, shall fail to account for and pay over the proceeds thereof forthwith to his principal or the owner of such property; in either or any of such cases, he shall be adjudged guilty of fraud, and shall, on conviction, be punished by fine not exceeding five thousand dollars, or by imprisonment in the penitentiary for a term not exceeding five years, or by both such fine and imprisonment: Provided, that nothing herein shall be construed to prevent such consignee or other person, lawfully possessed of such bill of lading or warehouse receipt, from pledging the same, to the extent of raising sufficient means thereby to pay charges for storage and shipment, or advances drawn for on such property by the owner or consignor thereof; and a draft or order by such owner or consignor for advances shall be held and taken to be 'written authority,' within the meaning of this section, for the hypothecation of such bill of lading or warehouse receipt, to the extent, and only to the extent, of raising the means to meet such draft and to pay such freights and storage." Missouri Laws, 1874, p. 51.

" 4th. Whether such transactions were valid in favor of the plaintiff as against the defendants, by reason of the fact that J. H. Dowell was a partner in the firm of Allen & Dowell.

" 5th. Whether upon the sale of cotton having been finally made by J. H. Dowell & Co., as stated in the findings, J. H. Dowell & Co. became debtors only of the consignors of the cotton, and had the right as to the plaintiff for this borrowed money out of the proceeds of the sale of such cotton.

" 6th. Whether upon the findings the judgment should be for the plaintiff or for the defendants."

Upon the special finding of facts, and in accordance with the opinion of the Circuit Judge, judgment was entered for the plaintiff in the sum of $5377.08, with interest and costs, and the defendants sued out this writ of error.

*Mr. John N. Rogers*, for plaintiffs in error, cited: *Gibson v. Stevens*, 8 How. 384; *St. Louis National Bank v. Ross*, 9 Missouri App. 399, 411; *Fourth National Bank v. St. Louis Cotton Compress Co.*, 11 Missouri App. 333; *Rice v. Cutler*, 17 Wis. 351; *Warner v. Martin*, 11 How. 209, 224; *McCombie v. Davies*, 7 East, 5; *Martini v. Coles*, 1 M. & S. 140; *Solly v. Rathbone*, 2 M. & S. 298; *Cockran v. Irlam*, 2 M. & S. 301; *Urquhart v. McIver*, 4 Johns. 103, 116; *Gray v. Agnew*, 95 Ill. 315; *Newbold v. Wright*, 4 Rawle, 195; *Rodriguez v. Heffernan*, 5 Johns. Ch. 417, 429; *Merchants' National Bank v. Trenholm*, 12 Heiskell, 520; *Kauffman v. Beasley*, 54 Texas, 563; *Benny v. Rhodes*, 18 Missouri, 147; *S. C.* 59 Am. Dec. 293; *Benny v. Pegram*, 18 Missouri, 191; *S. C.* 59 Am. Dec. 298; *Wheeler & Wilson Co. v. Givan*, 65 Missouri, 89; *Queiroz v. Trueman*, 3 B. & C. 342; *Graham v. Dyster*, 2 Starkie, 21; *D'Aubigny v. Duval*, 5 T. R. 604; *Barnard v. Kellogg*, 10 Wall. 383, 390; *Oelrichs v. Ford*, 23 How. 49, 63; *Savings Bank v. Ward*, 100 U. S. 195, 206; *Thompson v. Riggs*, 5 Wall. 663, 679; *National Bank v. Burkhardt*, 100 U. S. 686, 692; *Lehman v. Marshall*, 47 Ala. 362; *Rogers v. Batchelor*, 12 Pet. 221; *Dob v. Halsey*, 16 Johns. 34; *S. C.* 8 Am. Dec. 293; *Snaith v. Burridge*, 4 Taunt. 684; *Brewster v. Mott*, 4 Scammon, 378; *Kelley v. Greenleaf*, 3

Story, 93; *Steiger* v. *Third National Bank*, 2 McCrary, 494; *S. C.* 6 Fed. Rep. 569; *Shaw* v. *Railroad Co.*, 101 U. S. 557; *Smith* v. *Sac County*, 11 Wall. 139; *Greenbaum* v. *Megibben*, 10 Bush, 419; *First National Bank* v. *Boyce*, 78 Kentucky, 42; *Erie & Pacific Dispatch* v. *St. Louis Cotton Compress Co.*, 6 Missouri App. 172; *Whitlock* v. *Hay*, 58 N. Y. 484: *Insurance Co.* v. *Kiger*, 103 U. S. 352; *Price* v. *Ins. Co.*, 43 Wis. 267; *Stevens* v. *Wilson*, 6 Hill, 512; *S. C. in error*, 3 Denio, 472; *Covell* v. *Hill*, 6 N. Y. 374, 380; *Cartwright* v. *Wilmerding*, 24 N. Y. 521, 534; *Howland* v. *Woodruff*, 60 N. Y. 73, 79–80.

*Mr. James Hagerman* for defendant in error, (*Mr. Frank Hagerman* was with him on the brief,) cited: *Kingston Bank* v. *Gay*, 19 Barb. 459; *Roach* v. *Turk*, 9 Heiskell, 708; *McCombie* v. *Davies*, 6 East, 538; *Laussatt* v. *Lippincott*, 6 S. & R. 386; *S. C.* 9 Am. Dec. 440; *Borie* v. *Napier*, 1 McCord, 1; *Foley* v. *Hill*, 2 H. L. Cas. 28; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Boyden* v. *Bank of Cape Fear*, 65 No. Car. 13; *Allen* v. *Fourth Nat. Bank*, 37 N. Y. Superior (5 Jones & Spencer), 137; *Buchanan Farm Oil Co.* v. *Woodman*, 1 Hun, 639; *In re Franklin Bank*, 1 Paige, 249; *S. C.* 19 Am. Dec. 413; *Phenix Bank* v. *Risley*, 11 U. S. 125; *Thompson* v. *Riggs*, 5 Wall. 663, 678; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Bank of Republic* v. *Millard*, 10 Wall. 152; *Clark* v. *Moody*, 17 Mass. 145, 147; *Martini* v. *Coles*, 1 M. & S. 140; *Shipley* v. *Kymer*, 1 M. & S. 484; *Evans* v. *Pollen*, 2 Gallison, 13; *Kingston* v. *Wilson*, 1 Wash. C. C. 310; *Stewart* v. *Aberdein*, 4 M. & W. 211; *Catterall* v. *Hindle*, L. R. 2 C. P. 368; *Sweeting* v. *Pearce*, 9 C. B. N. S. 534; *McNeil* v. *Tenth National Bank*, 46 N. Y. 325; *Moore* v. *Metropolitan Bank*, 55 N. Y. 41; *Weirick* v. *Mahoning Bank*, 16 Ohio St. 296; *Combes* v. *Chandler*, 33 Ohio St. 178; *Winter* v. *Belmont Mining Co.*, 53 Cal. 428; *Price* v. *Wisconsin Marine & Fire Ins. Co.*, 43 Wis. 267–269; *Henry* v. *Philadelphia Warehouse Co.*, 81 Penn. St. 76; *Pegram* v. *Carson*, 10 Bosworth, 505; *Howland* v. *Woodruff*, 60 N. Y. 73; *Locke* v. *Lewis*, 124 Mass. 1; *International Bank* v. *German Bank*, 71

Missouri, 183 ; *Talty* v. *Freedman's Savings Co.*, 93 U. S. 321 ; *Goodenow* v. *Tyler*, 7 Mass. 36 ; *S. C.* 5 Am. Dec. 22.

MR. JUSTICE GRAY delivered the opinion of the court.

When a jury is waived in writing, and the case tried by the court, the court's finding of facts, whether general or special, has the same effect as the verdict of a jury ; and although a bill of exceptions is the only way of presenting rulings made in the progress of the trial, the question whether the facts set forth in a special finding of the court, which is equivalent to a special verdict, are sufficient in law to support the judgment, may be reviewed on writ of error without any bill of exceptions. Act of March 3, 1865, c. 86, § 4, 13 Stat. 501; Rev. Stat. §§ 649, 700; *French* v. *Edwards*, 21 Wall. 147; *Ex parte French*, 91 U. S. 423. The question whether the facts found by the court in the case at bar are sufficient to support the judgment below includes the several questions of law affecting the merits of the case. That judgment is for more than $5000, which is sufficient to give this court jurisdiction in error. Act of February 16, 1875, c. 77, § 3, 18 Stat. 316. It is therefore unnecessary to consider whether those questions are duly stated in the certificate of division of opinion, within the rule affirmed in *Williamsport Bank* v. *Knapp*, 119 U. S. 357.

The leading facts of the case, as found by the Circuit Court, are as follows:

The original action was on a promissory note made by the defendants, payable to the order of J. H. Dowell & Co., and by them indorsed to the plaintiff bank. J. H. Dowell & Co. were a partnership of cotton factors at St. Louis, in which Dowell was the active and managing partner. Dowell was also a partner with the defendants, under the name of Allen & Dowell, in the working of a cotton plantation in Arkansas.

The note in suit was made and delivered by the defendants to the payees, their factors, to enable them to raise funds to furnish supplies for working that plantation, and under an agreement between the parties that the note should be taken

up and paid by the factors out of the proceeds of the cotton crop of the plantation for the coming season, when received and sold by them. That crop was consigned to the factors under that agreement, and its proceeds were more than sufficient to pay this note and all other charges of the factors. It is not doubted that upon these facts the makers would have a complete defence to the note in the hands of the payees.

But before the maturity of the note, the payees had it discounted by, and indorsed and delivered it to, the plaintiff bank, with which they kept their deposit account, and of which they from time to time borrowed large sums of money. As soon as they received the bills of lading of cotton consigned to them as factors by the defendants or by other persons, they delivered those bills to the bank, which thereupon gave them a credit, in their deposit account, of $40 for each bale, and took their note for the amount, payable on demand, with interest. On the arrival of the cotton, it was delivered to warehousemen, who gave receipts undertaking to deliver it to bearer, and these receipts were delivered to the bank in exchange for the bills of lading, which were surrendered and cancelled. There was no evidence that either the bills of lading or the warehouse receipts were indorsed in writing. The bank knew that the payees of the note in suit were factors, and that they held the cotton as such. It did not know and made no inquiry as to the ownership of any of the cotton, or the dealings of the factors with the owners, or the state of accounts between them.

The cotton was sold in the following manner: The factors negotiated sales by means of samples, and fixed the price and other terms of sale. The bank received the whole price from the purchasers, and delivered to them the warehouse receipts, and credited the factors with the amount received, but at the same time, and as part of the same transaction, required them to draw, and they did draw and deliver to the bank, their checks for the amount of their demand notes held by the bank. After all the cotton had been sold, there was a large balance of account due from the factors to the bank.

The substance of the transaction between the factors and

the bank in regard to the cotton was, that the factors delivered the bills of lading and warehouse receipts to the bank to secure the repayment of money lent them by the bank, and thereby made a pledge of the cotton to secure their own debt; *Insurance Co.* v. *Kiger*, 103 U. S. 352, 356; and that the bank sold, on terms negotiated by the factors, the cotton so pledged to it, and received the price from the purchasers. The notes and checks which passed between the factors and the bank were but forms to carry out the main purpose of the transaction between them, and did not change its nature or effect.

By the common law, a factor or agent for sale has no power to pledge, whether the owner has intrusted him with the possession of the goods themselves, or with the symbol of them, as by consigning them to him by a bill of lading in which he is consignee or indorsee. 2 Kent Com. 625; *Kinder* v. *Shaw*, 2 Mass. 398; *Warner* v. *Martin*, 11 How. 209, 224; *Phillips* v. *Huth*, 6 M. & W. 572, 596; *Cole* v. *Northwestern Bank*, L. R. 10 C. P. 354, 363. And such was the law of Missouri before the passage of any statute upon the subject. *Benny* v. *Rhodes*, 18 Missouri, 147; *S. C.* 59 Am. Dec. 293; *Benny* v. *Pegram*, 18 Missouri, 191; *S. C.* 59 Am. Dec. 298.

The essential difference between a power to sell and a power to pledge is well brought out in a recent case in the House of Lords by Lord Chancellor Selborne, who said: "It is manifest that when a man is dealing with other people's goods, the difference between an authority to sell, and an authority to mortgage or pledge, is one which may go to the root of all the motives and purposes of the transaction. The object of a person who has goods to sell is to turn them into money; but when those goods are deposited by way of security for money borrowed, it is a transaction of a totally different character. If the owner of the goods does not get the money, his object and purpose are simply defeated; and if, on the other hand, he does get the money, a different object and different purpose are substituted for the first, namely, that of borrowing money and contracting the relation of debtor with a creditor, while retaining a redeemable title to the goods, instead of exchanging the title to the goods for a title, unaccompanied by any

indebtedness, to their full equivalent in money." *City Bank*
v. *Barrow*, 5 App. Cas. 664, 670.

The weight and bearing of the cases, cited at the bar, upon
the construction of the statutes of Missouri annexed to the
finding of facts, cannot be properly appreciated without keep-
ing in mind the provisions of the various statutes under which
those cases arose.

The English Factors' Act of 6 Geo. 4, c. 94, passed in 1825,
enacted in § 2 that any person intrusted with and in possession
of any bill of lading, warehouse receipt or other like document,
should be deemed and taken to be the true owner of the goods
described therein, so far as to give validity to any contract
made by him with other persons for the sale or disposition of
the goods, or for the deposit or pledge thereof as a security for
advances made by them "upon the faith of such several docu-
ments or either of them;" provided such persons had no notice,
by such documents or otherwise, that the person intrusted as
aforesaid was not the actual and *bona fide* owner of the goods.

The New York Factors' Act of 1830, c. 179, based upon the
act of 6 Geo. 4, provided in § 3 that every factor or other
agent, intrusted with the possession of any bill of lading,
custom-house permit or warehouse-keeper's receipt for the
delivery of merchandise, and every such factor or agent, not
having the documentary evidence of title, but intrusted with
the possession of any merchandise for the purpose of sale, or
as a security for any advances to be made or obtained thereon,
should be deemed to be the true owner thereof, so far as to
give validity to any contract made by him with any other
person for the sale or disposition of the merchandise, for any
advances made by such other person " upon the faith thereof."
It will be observed that this section did not in terms repeat
the proviso of the corresponding section of the English act.

But before the enactment in Missouri of any of the statutes
cited in argument, the construction of this section of the New
York statute had been settled, by decisions of the highest
courts of that state and of this court, to be that the words
" on the faith thereof" were not to be referred to " merchan-
dise," or to its symbols, but to the words " shall be deemed to

be the true owner thereof." In the leading case, Mr. Justice Bronson, speaking for Chief Justice Nelson, Mr. Justice Beardsley and himself, said: " The obvious meaning is, that the factor or other agent who has been intrusted with certain documentary evidence of title, or with the possession and ostensible ownership of the property, shall be deemed the true owner, so far as may be necessary to protect those who have dealt with him – upon the faith thereof;' that is, upon the faith, induced by the usual indicia of title, that he was the true owner of the property. The second section of the British statute, which answers very nearly to the third section of our own, contains a proviso which expressly saves the rights of the true owner where the pledgee had notice that he was dealing with an agent; and our statute, though framed in a different manner, was evidently designed to produce the same result. It is impossible to suppose that the legislature intended to enable the factor to commit a fraud upon his principal, by pledging or obtaining advances upon the goods for his own purposes, when the pledgee or person making the advances knew that he was not dealing with the true owner." *Stevens* v. *Wilson* (1844), 6 Hill, 512, 514; *S. C.*, in Court of Errors (1846), 3 Denio, 472; *Warner* v. *Martin* (1850), 11 How. 209, 228; *Covell* v. *Hill* (1852), 6 N. Y. 374, 380; *Cartwright* v. *Wilmerding* (1862), 24 N. Y. 521, 534; *Dows* v. *Greene* (1862), 24 N. Y. 638, 642. See also *Howland* v. *Woodruff* (1875), 60 N. Y. 73, 79, 80; *First National Bank* v. *Shaw* (1874), 61 N. Y. 283, 301.

If the legislature of Missouri had adopted the words of that provision of the New York Factors' Act, the meaning of which had been thus settled on full consideration by the highest courts of that state and by this court, there would be the strongest ground for holding, in accordance with a familiar canon of construction, that it had enacted those words with that meaning. *Cathcart* v. *Robinson*, 5 Pet. 264, 280; *McDonald* v. *Hovey*, 110 U. S. 619, 628; *Commonwealth* v. *Hartnett*, 3 Gray, 450; *Scruggs* v. *Blair*, 44 Mississippi, 406; *Wiesner* v. *Zann*, 39 Wisconsin, 188, 205.

But the statute of Missouri of March 4, 1869, differs widely,

in language and in purpose, from the New York Factors' Act of 1830, and was apparently derived, through §§ 6 and 9 ·of the Missouri statute of March 10, 1868, from the statute of New York of 1858, c. 326, entitled "An act to prevent the issue of false receipts, and to prevent fraudulent transfers of property, by warehousemen, wharfingers and others," as amended by the statute of that state of 1859, c. 353, extending its provisions to bills of lading. None of these provisions of the Missouri statutes are limited or even addressed to factors or other agents authorized to sell the goods of their principals, and intrusted for that purpose with the possession either of the goods, or of warehouse receipts, bills of lading or other similar documents in which such agents are named as consignees. But their leading object is to regulate the manner and effect of transferring warehouse receipts and bills of lading by indorsement.

By § 6 of the statute of Missouri of 1868, (following almost word for word the statutes of New York of 1858, c. 326, § 6, and 1859, c. 353,) it was enacted that warehouse receipts or bills of lading "may be transferred by indorsement thereon, and any person to whom the same may be transferred shall be deemed and taken to be the owner of the goods, wares, merchandise, grain, flour, or other produce or commodity, therein specified, so far as to give validity to any pledge, lien, or transfer made or created by such person or persons," that is, by the indorsee before mentioned; and by § 9, warehouse receipts and bills of lading were made "negotiable by indorsement in blank, or by special indorsement, in the same manner and to the same extent as bills of exchange and promissory notes." Missouri Laws, 1868, pp. 12, 13.

By § 3 of the statute of 1869, those sections of the statute of 1868 are repealed. But § 1 of the later statute substantially reënacts § 9 of the earlier one, substituting for the words "by indorsement in blank or by special indorsement," the words "by written indorsement thereon and delivery," and omitting the words "and to the same extent;" and § 2 reënacts § 6, with the substitution, for the words "by indorsement thereon," of the words "by indorsement in writ-

ing thereon and the delivery thereof so indorsed," and, for the words "by such person or persons," of the words "thereby, as on the faith thereof." Missouri Laws, 1869, p. 91.

The principal provisions of the statute of 1869, then, as to all warehouse receipts and bills of lading, (except those which have the words "not negotiable" plainly written or stamped upon their face,) are, first, that they are "made negotiable by written indorsement thereon and delivery in the same manner as bills of exchange and promissory notes;" and, second, that any person "to whom the same may be transferred shall be deemed and held to be the owner of the goods," "so far as to give validity to any pledge, lien or transfer, given, made or created thereby, as on the faith thereof."

The first provision, while it doubtless gives the indorsee the right to sue thereon in his own name, does not, for the reasons fully stated by Mr. Justice Strong in delivering the judgment of this court in *Shaw* v. *Railroad Co.*, 101 U. S. 557, attach to such an indorsement of the symbol of property the same effect which the common law gives to the indorsement of a bill of exchange or promissory note for the payment of a sum of money; nor confer upon persons making, upon a bill of lading indorsed in blank by the owner, an advance of money to a subsequent indorser whom they have reason to believe not to be the owner, the right to hold the goods against the true owner.

The second provision does not appear to have been brought to the notice of this court in that case, and presents more difficulty. It differs from the provision of the Factors' Act of New York, construed by the courts of that state and by this court in the cases before cited, in several important particulars: 1st. Any person "to whom the same may be transferred" (instead of any person by whom it is transferred) "shall be deemed and held to be the owner." 2d. The ensuing qualification is, "so far as to give validity to any pledge, lien or transfer, given, made or created thereby," which last word cannot possibly be referred to anything but the transfer aforesaid. 3d. The words "as on the faith thereof" follow directly afterwards, without any intermediate mention of ad-

vances made by the transferee. In short, the New York Factors' Act declares that any agent intrusted with the possession of goods, or of the symbol thereof, shall be deemed to be the true owner, so far as to give validity to a pledge made by him to another person for advances made by the latter "on the faith thereof;" but the Missouri statute only declares that an indorsee of the symbol of property shall be deemed to be the owner, so far as to give validity to any pledge made to him by such indorsement. "as on the faith thereof." The difficulty arises from the introduction of the words "on the faith thereof," borrowed from the factors' acts, into a statute relating to the negotiability of warehouse receipts and bills of lading, without sufficient regard to the difference in the terms and the objects of the two classes of statutes.

It may well be that, upon a view of the whole provision, it protects only *bona fide* indorsees. *Whitlock* v. *Hay,* 58 N. Y. 484, 487; *Steiger* v. *Third National Bank,* 2 McCrary, 494, 498. But it is by no means clear that the mere fact that the indorsee of the bill of lading or warehouse receipt knows that the indorser is a factor and holds the goods as such is sufficient proof of bad faith. Under the English Factors' Act of 5 & 6 Vict. c. 39, extending the provisions of the act of 6 Geo. 4, and protecting those advances only, which are "made *bona fide* and without notice that the agent making" the pledge "has not authority to make the same, or is acting *mala fide* in respect thereof against the owner" of the goods, it has been held by the highest authorities that knowledge that the agent making the pledge is a factor, without further notice that he is acting *mala fide* and beyond his authority, does not deprive the pledgee of the protection of the statute. *Navulshaw* v. *Brownrigg,* 1 Sim. N. S. 573, and 2 D., M. & G. 441; *Vickers* v. *Hertz,* L. R. 2 H. L. Sc. 113; *Kaltenbach* v. *Lewis,* 10 App. Cas. 617. Yet it may be doubted, whether receiving, from persons known to be factors and to hold property as such, a pledge of the symbols of the property, to secure the payment of the general balance of their bank account with the pledgee, is consistent with good faith.

We have considered the question of the effect of the words

"on the faith thereof," as used in Missouri and elsewhere, at some length, because of the large space devoted to it in the arguments of counsel, and in order to put the whole matter in a clearer light. But it is not necessary to express a decisive opinion upon the meaning of those words, as they stand in the Missouri statute of 1869, because upon a narrower ground it is quite clear that that statute affords no protection to the plaintiff.

That statute applies only to transfers of warehouse receipts and bills of lading by "indorsement" in writing thereon and the delivery thereof so indorsed." The finding of facts contains this statement: "It is not shown whether or not the bills of lading or the warehouse receipts or any of them were indorsed in writing by J. H. Dowell & Co. or by any one, when transferred to the bank, there being no evidence on this specific matter." The want of any evidence upon this point is perhaps to be explained by the facts, also found and stated, that upon the delivery of the warehouse receipts to the bank the bills of lading were surrendered and cancelled, and that the warehouse receipts ran to bearer, and were therefore probably not indorsed. But whatever be the explanation, the fact remains, that it was not proved, and cannot be presumed, that either the bills of lading or the warehouse receipts were indorsed in writing, as required by the statute; and no better title passes by a transfer of the symbols without such indorsement than by a delivery of the goods which they represent. *Rice* v. *Cutler*, 17 Wisconsin, 351, 358, 359; *Hirschorn* v. *Canney*, 98 Mass. 149; *Erie & Pacific Dispatch Co.* v. *St. Louis Co.*, 6 Missouri App. 172; *Fourth National Bank* v. *St. Louis Co.*, 11 Missouri App. 333.

The decision in *Price* v. *Wisconsin Ins. Co.*, 43 Wisconsin, 267, on which the plaintiff much relied, was based both upon a warehouse receipt act differing from that of Missouri in allowing the documents to be transferred "by delivery, with or without indorsement," and in not containing the words "as on the faith thereof;" and also upon other grounds inconsistent with the judgments of this court in *Warner* v. *Martin*, and *Shaw* v. *Railroad Co.*, before cited.

The statute of Missouri of March 28, 1874, affixing a heavy penalty to the negotiation or pledge of bills of lading or warehouse receipts by an agent, or consignee, without the written authority of the owner or consignor, does not change the law as to the validity of the transfer as between individuals. A transfer by an agent, that before was valid as between his principal and his transferee, is not invalidated by the statute. *Gardner* v. *Gager*, 1 Allen, 502. And with even stronger reason a transfer that was wholly invalid before is not rendered valid by being made a criminal offence. The proviso that any consignee or agent, lawfully possessed of a bill of lading or warehouse receipt, may pledge it to the extent of raising sufficient means to pay charges for storage or shipment, or for advances drawn for by the owner or consignor, has no application to this case; because this pledge was not made for either of those purposes, but to secure the factors' own debt to the pledgee.

Factors having no power, by the law of Missouri, to make a pledge of the goods of their principals by a transfer, without indorsement in writing, of the bills of lading or warehouse receipts, the finding of the Circuit Court, that the transactions between the factors and the plaintiff "were all according to the general usage of trade between banks and cotton factors at St. Louis," cannot aid the plaintiff; because the usage attempted to be set up was not shown to have been known to the defendants or to other owners of cotton; and because it was contrary to law, in that it undertook to alter the nature of the contract between the factors and their principals, which authorizes them to sell, but not to pledge, and in that it would sustain a pledge by a factor of the goods of several principals to secure the payment of his own general balance of account to a third person. *Barnard* v. *Kellogg*, 10 Wall. 383; *Irwin* v. *Williar*, 110 U. S. 499; *Newbold* v. *Wright*, 4 Rawle, 195; *Lehman* v. *Marshall*, 47 Alabama, 362; *Leuckart* v. *Cooper*, 3 Bing. N. C. 99; *S. C.* 3 Scott, 521, and 2 Hodges, 150; *Robinson* v. *Mollett*, L. R. 7 H. L. 802.

Nor is the further fact found, that Dowell, the active member of the firm of J. H. Dowell & Co., the factors, was also a partner with the defendants in the working of the plantation,

at all material; because he had not been held out by the defendants as the owner of the property, or as authorized by them to dispose of it otherwise than as a factor, and was not understood by the plaintiff to be acting in any other capacity. *Rogers* v. *Batchelor*, 12 Pet. 221 ; *Locke* v. *Lewis*, 124 Mass. 1.

Although the general relation of a bank to its depositor is that of debtor and creditor, yet when, as in this case, a factor, holding property in trust for his principal, transfers it to a bank which has notice of the capacity in which he holds it, the principal may assert his right in the property against the bank, either by independent suit, or by way of defence to an action by the bank against him. The defendants in this case were therefore entitled to have the proceeds of their property, so received by the plaintiff, applied to the payment of the note in suit. *National Bank* v. *Insurance Co.*, 104 U. S. 54; *Baker* v. *New York Bank*, 100 N. Y. 31 ; *St. Louis Bank* v. *Ross*, 9 Missouri App. 399. As those proceeds are found to have been more than sufficient to pay and satisfy this note and all other charges of the factors against the defendants, the plaintiff cannot maintain this action.

All the facts of the case being ascertained by the special finding of the court below, as they would be by the special verdict of a jury, there is no reason for awarding a new trial, but there must be a general judgment for the defendants. *Fort Scott* v. *Hickman*, 112 U. S. 150.

*Judgment reversed, and case remanded to the Circuit Court, with directions to enter judgment for the original defendants.*