# COSTIKYAN *v.* SLOAN.

SALES; CONSIGNMENTS; FACTORS; STATUTES; CUSTOM AND USAGE; AUCTIONEERS; CONTRACTS; RATIFICATION; REPLEVIN; APPEAL AND ERROR.

1. Where, in an action of replevin by the consignors of goods, who had shipped them to dealers in such goods, against an auctioneer to whom the dealers had pledged them for advances to them personally, the plaintiffs' evidence tends to show that they had sent the goods to the dealers for sale; that the dealers were to account promptly for them at prices fixed in memorandum invoice bills sent with them, retaining all the selling price received in excess of such invoice price, and that the understanding was that the goods were the property of the shippers, and such as were unsold were to be returned on demand,—the trial court properly refuses to direct a verdict for the defendant.

2. A factor or agent in possession of goods for the purpose of sale has no authority to pledge them for a debt of his own or for advances made on them, and it is immaterial that the pledgee is ignorant of the fact that the pledgor was not the owner of the goods.

3. The factor's act of a State, which protects the innocent pledgee, without notice, of a factor or agent in possession of his principal's goods, has no operation in this District upon the rights of such a pledgee here of goods shipped here from that State for sale; the rights of the pledgee and principal being determinable by the local law.

4. A general custom or usage of trade may be available to ascertain or explain the meaning of a contract, where the parties may be presumed to have contracted with reference to it, but it cannot be permitted to alter or subvert settled rules of law, and no aid can be derived from it when contrary to the settled law.

5. Where the owners of goods ship them to their factors in this District for sale, and the latter, with the knowledge and acquiescence of their principals, deliver them to an auctioneer for sale at public auction, the principals will be deemed to have ratified the act of the factors in so doing, and the goods will be liable to the charges of the auctioneer incident to such sale, and he will be entitled to a lien therefor; and a later shipment of goods also delivered by the factors to the auctioneer,

but against the express instructions of their principals, will also be liable to such charges and subject to such lien, where the principals did not notify the auctioneer of such instructions.

6. But, in such a case, the goods are not liable for any charges or subject to any lien created by a secret agreement between the factors and the auctioneer, or for any money loaned by the auctioneer to the factors personally, in the belief that they were owners of the goods.

7. Replevin is ordinarily a possessory action, yet the title may be put in issue and determined, and where the general issue is the plea provided by statute, both the right of possession and of property may be raised thereunder.

8. Where, in replevin against an auctioneer who claimed a lien upon the goods in controversy, for advances made on them, it appeared that the transactions upon which the defendant's claim was based were numerous, and his accounts with his consignors complex, the court, in remanding the case to the lower court for a new trial, suggested the advisability of submitting the case to the jury upon special issues, one of which should require the finding of the exact sum, if any, chargeable for the auctioneer's expenses incurred on account of the particular goods in controversy.

9. The court, in denying a motion for a rehearing in a case in which the trial court directed a verdict for the defendant, and in which on appeal by plaintiff from the judgment on the verdict, the judgment was reversed, and the case remanded for a new trial, stated that the opinion was confined to determining the issue presented on the order directing the verdict, and the settling of the questions of law suggested.

No. 2004.    Submitted May 6, 1909.    Decided June 1, 1909.

HEARING on an appeal by the plaintiffs from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court in an action of replevin.    *Reversed.*

The COURT in the opinion stated the facts as follows:

Several plaintiffs, copartners, under the name of Costikyan & Company, brought this action of replevin against Moses N. and Nejib Hekimian, trading as M. N. Hekimian & Company, and Charles G. Sloan, trading as Charles G. Sloan & Company, to recover the possession of certain Persian rugs and carpets, a

list of which is attached to the declaration. It was alleged that the goods were of the value of $1,500, and judgment was asked for the value and damages in the sum of $2,500. The writ of replevin issued, and under it the marshal took into his possession certain carpets and rugs, the appraised value of which he returned as $1,272. Thereafter, the goods were ordered returned to the defendant Charles G. Sloan, in whose possession they were found, upon his giving an undertaking for the return of the same. The general issue was pleaded by Sloan. The case was tried by jury on the 7th day of December, 1908, and, by direction of the court, a verdict was returned for the defendant Sloan.

The testimony for the plaintiff was to the effect that his firm were wholesale carpet and rug dealers in New York. That they commenced dealings with Hekimian & Company, who were retail rug dealers in the city of Washington, about June, 1907.

They sold some goods which are not involved in this action. They consigned others to Hekimian & Company for sale, making four shipments (June, August, and September, 1907, and February, 1908). A memorandum bill was sent of each consignment, with prices marked opposite each article. Hekimian & Company were to sell, and account to plaintiff at those prices, retaining all that they might realize above the same. Upon sales they were to remit promptly. The understanding was that the goods were the property of plaintiffs, and such as were unsold were to be returned on plaintiffs' demand. Witness admitted that plaintiffs were aware that some goods of the first three shipments had been sent by the consignees to Sloan & Company for sale at auction; and that they had not objected thereto, or notified Sloan & Company of the state of the title. That Hekimian & Company had been notified not to let the goods of the February, 1908, shipment go out of their own store, but that they should be sold there only or returned. Plaintiffs gave no notice of this restriction to Sloan & Company. Witness identified his goods described in the declaration in the auction house of Sloan & Company; part of them belonging to the consignment of September, 1907, and part to that of February 8, 1908. Demand

was made of Sloan & Company on the day the action was begun, who refused to deliver the goods.

One of the Hekimians, testifying on his own behalf, corroborated Costikyan in respect of the terms of the agreement for the consignment of the goods. This witness produced a written agreement between Sloan & Company and Hekimian & Company, made September 7, 1907, by which Sloan & Company agreed to give Hekimian & Company the use of their services as auctioneers for eight months, to a certain extent exclusively. In consideration of the same, Hekimian & Company agreed to pay Sloan & Company $5,000, whether the sales made were as small as $100 or as great as $50,000, and 10 per cent additional on all sales in excess of $50,000. The said $5,000 to be paid in monthly instalments of $625 each. In case of sales by Sloan & Company for other parties at dates not claimed by Hekimian & Company, the latter were to receive one half of the commissions on such sales as were made for other parties. To secure the performance of this agreement, Hekimian & Company agreed to keep deposited with Sloan & Company at all times at least $2,500 worth of rugs and carpets. It was further provided that this agreement should be kept secret, and, in case Hekimian & Company should disclose the terms of the same, Sloan & Company were given the right to cancel, and Hekimian & Company bound themselves to pay $1,000 as liquidated damages, for which Sloan & Company were authorized to retain and assume title to the goods in their possession. It was further agreed that Hekimian & Company were to pay all customary charges and expenses, including catalogues, advertising, stationery, and postage.

Further testimony of defendants showed an account rendered by Sloan & Company to Hekimian & Company on March 18, 1908, showing a balance due Sloan & Company of $3,795.60. The general account between the two showed the monthly dues of $625 under the contract, but chiefly advances of money, which Sloan & Company made by way of indorsing notes for Hekimian & Company. There were some small items for advertisements and insurance on goods.

C. G. Sloan, testifying on his own behalf, said that the accounts were correct, and he produced certain receipts of Hekimian & Company for sums of money, and acknowledgments of indebtedness, and a lien for the same on rugs then in possession or that might be obtained in the future. That he had been an auctioneer in Washington since 1875, and had known the Hekimians about seven or eight years. That he had sold rugs for them extensively and had advanced them money on the same. That the first knowledge he had of plaintiffs' claims on the rugs was when Costikyan came in and claimed them, as testified by him. That it was the universal custom for auctioneers to make advances on goods delivered to them for sale, and had been so during his whole time in the business. That the Hekimians would come in sometimes with a half dozen rugs or so, and beg for money so earnestly that he would let them have it, although he thought their account was overdrawn. He said further that he did not think any sane auctioneer would advance money on goods that he knew were only consigned to the party by others.

The general account between Sloan & Company and Hekimian & Company, beginning October 1, 1907, showing a balance of $140.38 then due Sloan & Company, was then proved. The general debits, including advances of money, costs of advertising and printing, etc., and the $625 per month under the aforementioned contract. It footed up $25,984.01. There were credits for proceeds of sales, etc., amounting to $21,670.52, leaving a balance due Sloan & Company of $4,313.49.

This condensed statement of the evidence is thought sufficient for the purposes of the case.

At the close of the testimony, defendant's counsel moved the court to instruct the jury to return a verdict for the defendant Sloan upon several grounds named therein. In passing upon this motion, the learned trial justice states his conclusions substantially as follows:

1. The evidence of plaintiffs was sufficient to show that the goods had been shipped to Hekimian & Company on consignment, for sale at certain prices, and that they were and remained the property of the plaintiffs.

2. That plaintiffs knew that the goods of the first three consignments, or part of the same, had been delivered to Sloan & Company for sale at auction, and had given no notice to the latter that such action was beyond the authority of their sales agents; and that, as to such goods, the plaintiff acquiesced in, and ratified, the acts of their said agents, Hekimian & Company.

3. That Sloan & Company were rightfully in possession of said goods when the action was brought, having advanced money thereon by way of loan in the ordinary way of advancement by auctioneers, and for various expenses of printing, advertising, etc.

4. That, as to the last consignment of goods, plaintiffs failed to give notice to Sloan & Company of withdrawal of consent to the agents to sell the same as the others had been, but lay by and permitted Sloan & Company to receive them as they had the other goods, for sale at auction, whereby they became subject to the same right of detention for money advanced as before. In accordance with these latter conclusions, the jury were directed to return a verdict for the defendant Sloan & Company. Plaintiffs excepted to the action of the court, and have appealed from the judgment entered on the verdict.

*Mr. H. Winship Wheatley* for the appellants.

*Mr. Charles Cowles Tucker* and *Mr. J. Miller Kenyon* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The learned trial justice was unquestionably right in holding that the evidence tended to show a mere consignment of the goods to Hekimian & Company for sale on the plaintiffs' account. There was no sale, conditional or otherwise. No title passed from the plaintiffs. Hekimian & Company were their factors or agents for sale in the manner directed, and nothing

more. *Sturm* v. *Boker,* 150 U. S. 312, 326, 37 L. ed. 1093, 1099, 14 Sup. Ct. Rep. 99.

2. Having possession of the goods as factors and agents of the plaintiffs, Hekimian & Company had no authority to pledge them for a debt of their own, or for advances made to them; and it is of no consequence in such event that the pledgee may have been ignorant of the fact that the pledgeors were not the owners of the goods. *Warner* v. *Martin,* 11 How. 209, 224, 13 L. ed. 667, 673; *Allen* v. *St. Louis Nat. Bank,* 120 U. S. 20, 32, 30 L. ed. 573, 575, 7 Sup. Ct. Rep. 460.

3. Assuming that the statute of New York, as contended on behalf of the appellee, changes the rule of the common or general mercantile law, above stated, and extends protection to an innocent pledgee, we are of the opinion that it cannot govern the rights of the parties in this case. The question is not one of the construction of a contract in the light of the law of the place where made, but of the operation of a positive rule of law in another jurisdiction. Whilst the agreement between the plaintiffs and Hekimian & Company, in regard to the meaning of which there is no uncertainty, was made in New York, the goods were shipped to the District of Columbia, to be disposed of there. Sloan & Company were no parties to that contract. Their relations with the agents, Hekimian & Company, commenced in the District of Columbia, after the arrival of the goods there. The law of New York governs bailors and bailees, principals and agents in that State, and can have no operation upon the relations and rights of such persons in the District of Columbia. These must necessarily be determined by the local law.

5. The testimony offered to show the custom and usage of auctioneers in the District of Columbia, as regards advances made to persons delivering goods to them to be sold at auction, is entitled to no weight in so far as such usage is relied upon to alter or abrogate the prevailing rule of law. A general custom or usage of trade may be available to ascertain or explain the meaning of a contract where the parties may be presumed to have contracted with reference to it, but it cannot be per-

mitted to alter or subvert settled rules of law. No aid can be derived from it when contrary to the settled law. *Barnard* v. *Kellogg,* 10 Wall. 383, 390, 19 L. ed. 987, 989; *Allen* v. *St. Louis Nat. Bank,* 120 U. S. 20, 39, 30 L. ed. 573, 578, 7 Sup. Ct. Rep. 460.

5. It was not within the scope of the agency of Hekimian & Company to consign plaintiffs' goods to other sales agents for disposition at auction. But, having done so with the knowledge and acquiescence of plaintiffs, as admitted by witness Costikyan, in respect of all but the last shipment, this was a ratification, to that extent, of the acts of the agents; and, in the absence of notice to the contrary, Sloan & Company had the right to assume that the last delivery for sale at auction was within the scope of the agency.

Knowing that their goods were being delivered to the auctioneers for sale, and acquiescing therein, plaintiffs are chargeable with notice that there would be charges ordinarily incidental thereto, and that the auctioneers would be entitled to a lien therefor upon the proceeds of sales. Acquiescing in, and thereby ratifying, the action of their agents in employing the services of the auctioneers, they cannot escape the liability of their goods to the extent of the auctioneers' lien.

6. Bearing in mind, also, the well-settled boundary between the province of court and jury, respectively, it remains to apply the foregoing rules of law to the facts that have been recited, in order to determine whether the court erred in directing the verdict for the defendants Sloan & Company.

Without undertaking to analyze the account rendered by Sloan & Company against Hekimian & Company, or to discuss its items, it is sufficient to say that it will require additional testimony to show what charges for expenses and advances of money apply particularly to the specific items of merchandise involved in this action. In the first place, it was stated on the argument that there are several other similar actions by other plaintiffs claiming to be the owners of like goods that had been delivered during the same period by Hekimian & Company to Sloan & Company. If Sloan & Company were entitled to retain

all of the goods deposited with them by Hekimiań & Company, of whatever ownership, for the enforcement of their account for money advances as well as for incidental expenses, this lien ought to be apportioned among the several owners. Goods belonging to Hekimian & Company would first be liable, and any deficit thereafter should be borne by the other owners of the goods, in proper proportion. This, of course, could only be accomplished in a court of equity. But the action is at law by each claimant separately. Replevin is ordinarily a possessory action, yet the title may be put in issue and determined. As the general issue is the plea provided by the Code, both the right of possession and of property may be raised thereunder. It is true that, under the proof, Sloan & Company make no claim of title, but only the right of possession until their charges shall have been paid. At the same time, the plaintiffs cannot recover, under any circumstances, unless they show a title to the property as against Hekimian & Company. Under the evidence submitted, it appears that Hekimian & Company do not, in fact, claim title as against the plaintiffs to the articles described in the declaration.

The ratification of the acts of Hekimian & Company in depositing the goods with Sloan & Company for sale at auction rendered them, as we have seen, liable to the charges of Sloan & Company on the several items thereof to the extent of the ordinary auctioneers' charges actually incurred. But plaintiffs' goods cannot be subjected to any lien or claim for charges created by the secret contract between Sloan & Company and Hekimian & Company, which was not made public until the trial. Nor can Sloan & Company's right to retain possession of the plaintiffs' goods be extended to the money advanced to Hekimian & Company on the same, under the belief that they were the owners, for, as before stated, Hekimian & Company had no authority to pledge the goods for a loan to themselves, whether Sloan & Company, at the time, had or had not notice of the plaintiffs' superior title. Sloan & Company, supposing that Hekimian & Company were the owners of the goods, advanced the money to them, and not for, or on account of, the

plaintiffs. So far as the evidence goes, they do not pretend, nor could they do so, in the light of their defense of want of notice of plaintiffs' title, that they advanced the money to or for the plaintiffs. For a stronger reason, the goods in this case could not be subjected to claims for advances to Hekimian & Company, prior to their receipt by Sloan & Company, or to a general balance due by Hekimian & Company on account of charges for goods formerly sold, and the money advanced thereon.

We are of the opinion that the case should have been submitted to the jury upon a charge defining the rights of the parties as hereinabove declared. The jury should, in other words, have been charged that the plaintiffs were entitled to recover possession of the goods in controversy, unless they should find from the evidence that there were actual auctioneers' charges, as heretofore defined, against the particular goods.

On account of the complexity of the account, covering, as it does, a series of transactions between Sloan & Company and Hekimian & Company, it would be advisable to submit the case upon special issues, one of which should require a finding of the exact sum, if any, chargeable for the auctioneers' expenses incurred on account of the particular goods in controversy. If there be any such charge, Sloan & Company would be entitled to retain the possession of the goods as against the plaintiffs. But, when so ascertained, plaintiffs could reclaim their goods upon its payment or tender.

For these reasons the judgment will be reversed, with costs, and the case remanded for a new trial not inconsistent with this opinion. *Reversed.*

On June 3, 1909, the appellee submitted a motion for a rehearing or a modification of the opinion, on the ground, among others, that the evidence at the trial, as shown by the record, was conflicting as to whether the appellants had actual notice during the time they were shipping rugs to Hekimian & Company that the latter was obtaining loans from the appellee on such rugs, and that, if they did have such notice, that fact, on

the new trial directed by this court, should be submitted to the jury.

On June 4, 1909, the petition was denied, Mr. Chief Justice SHEPARD delivering the opinion of the Court:

As the verdict was directed in the court below, the case depended solely upon the sufficiency of the plaintiffs' evidence. We have held that the case should have been submitted to the jury. Because of the complicated nature of the account for money advanced, charges, and expenses, it has been deemed proper to suggest the submission of special issues upon another trial. The opinion in this case is confined to determining the issue presented on the order directing the verdict, and to settling questions of law suggested. The motion for rehearing is *overruled.*