# CHARLESTON.

## BOND *et als.* v. PRIEST.

Submitted February 22, 1916.    Decided February 29, 1916.

1. MINES AND MINERALS—*Oil and Gas Lease—Right to Extend.*

    A grantee in a deed, conveying a tract of land subject to an oil and gas lease under which the lessee has a right to drill or pay money in lieu of drilling, as it may see fit, reserving to the grantor a share of the royalties under that lease or any subsequent one and expressly authorizing the grantee to lease the land for oil and gas purposes and take the rentals, may rightfully extend the existing lease, before expiration thereof, in consideration of the annual payment of money in lieu of drilling. (p. 673).

2. ASSUMPSIT, ACTION OF—*Declaration—Demurrer.*

    A demurrer to a special count in a declaration in assumpsit, alleging such facts, is well taken. (p. 674).

3. APPEAL AND ERROR—*Decision on Appeal—Assumpsit.*

    On a writ of error to a judgment rendered by the trial court agreeable to its own finding, under a waiver of trial by jury, on a declaration in assumpsit, containing good common counts not sustained by any evidence at all, and a bad special count based upon documentary evidence showing no right of action in the plaintiff, the appellate court will not remand the case for amendment of the declaration, nor for a new trial, but will reverse the judgment, set aside the finding, sustain the demurrer to the special count and render a judgment *nil capiat.* (p. 674).

Error to Circuit Court, Lewis County.

77 W. Va.

Action by Jane H. Bond and others against Emma E. Priest. Judgment for plaintiffs, and defendant brings error.

*Reversed, and judgment for defendant.*

*Brannon, Stathers & Stathers,* for plaintiff in error.

*Robert L. Bland,* for defendants in error.

POFFENBARGER, JUDGE:

The judgment for $236.17, for a share of rentals or delay money, paid under a lease of a tract of land for oil and gas purposes, of which complaint is made on this writ of error, was rendered by the court on its own finding, in an action of assumpsit, trial by jury having been waived.

The declaration, to which and each count thereof a demurrer was interposed, admits, in its special count, lack or title to rentals *eo nomine,* but sets up a claim to a share of the rentals in lieu of damages or injury resulting from a breach of an alleged implied covenant in a deed, as an equitable or conscionable right, and claims it as money had and received by the defendant to the use of the plaintiff. After having set forth the evidence, in detail, it claims the sum of $400.00 as money "had and received to and for the use of the said plaintiffs". This count follows four common counts, for goods sold, work and labor, money lent and money had and received. Of course, the common counts are good, and, as to them, the demurrer was properly overruled. The facts alleged in the special count substantially coincide with those proved on the trial, wherefore one discussion thereof suffices for review of the ruling on the demurrer to that count and of the finding and judgment.

Plaintiffs, by a deed dated, October 24, 1906, conveyed to the defendant a tract of land containing about 40 acres, the residue of a tract which had originally contained about 100 acres. At that time, the entire tract was subject to a live oil and gas lease, dated, January 26, 1900. It created a specific term of ten years and provided for an extension thereof for such additional time as oil or gas should be produced. The rentals or delay money had been regularly paid. As to the rentals provided for and royalties contem-

plated, the lease being one in which the lessee had the option to drill or pay periodical sums in lieu of drilling, the deed provided as follows:

"Parties of the first part reserve one-half of the royalty in the oil and one-half the consideration paid for the gas within and underlying said tract of land, that is to say one-half of the one-eighth, or one-sixteenth of the oil and one-half of the consideration paid for any and all gas wells, drilled and to be drilled on said land, either under the present lease or any future leases thereon, but said second party shall be entitled to all rentals accruing under the present or future leases. Said party of the second part shall have full authority and power to lease said premises for oil and gas purposes after the expiration of the present lease thereon."

By an agreement dated November 8, 1909, less than 90 days before the expiration of the lease, no well having been drilled under it, the grantee and the owners of the other portion of the 100 acre tract, extended the lease and option as to drilling, for five years from the date of expiration thereof, upon consideration that the Hope Natural Gas Co., assignee, its successors or assigns, should pay to them $200.00 annually in advance, as commutation for failure to drill a well on the land within the respective periods for which such payments should be made. No well having been drilled under the lease or the extension thereof, there are no royalties to which the reservation in the deed can apply.

The special count and the agreement in support thereof base the claim of right of recovery on the alleged wrongful extension of the lease, depriving the plaintiffs, it is said, "of what would have been yielded to them by reason of the development of said premises within the term of said lease." As the lease did not bind the lessee to drill within the term, but made it optional to drill or pay money, the allegation of a loss or deprivation of benefit, by the extension of the lease, is a palpable *non sequitur*. The reservation was made in plain view of the right of the lessee to complete the term without drilling a well or producing any royalty. No covenant for production of royalty within the term or under the lease, either direct or indirect, existed, and the stipulation

in the deed did not bind the grantee to produce it or cause it to be produced within any specified time. It is not likely that any sale of the land would have been effected between the parties, if such a covenant had been made a condition of the offer of sale. An absolutely uncertain thing was reserved, a non-existent thing which nobody was obligated to bring into being. Manifestly the reservation was intended to operate only on such royalty as the existing lessee, or some subsequent one, should see fit to produce, the hazard of nonproduction being assumed by the grantors, and the right to all rentals expressly accorded to the grantee, until some lessee, deeming the land worth development for oil or gas, should drill a well. There being no covenant, either direct or indirect, express or implied, to produce a royalty, and the grantee having, by express stipulation, right to lease the land and take the rentals, the extension of the existing lease did not deprive the plaintiffs of anything, for they then had no title or right to anything respecting the land, except their covenant for interests in royalties which might have been, and still may be, produced, but which nobody was or is under any covenant to bring forth.

What the right of the plaintiffs, if any, would be, if the existing lease had bound the lessee to drill within the terms, or, if there was an allegation of drainage to the impairment or destruction of the prospective right under the reservation, there is no occasion to decide or indicate. No such covenant nor any drainage is alleged. The documents relied upon show there was no covenant to drill, and there is no evidence of drainage.

The demurrer to the special count disclosing no violation of any contractual right of the plaintiffs, should have been sustained, and, the documents on which it is founded being equally insufficient to make out a right of recovery, it cannot be amended, wherefore there is no occasion to remand for amendment. *Hendrickson* v. *New York,* 160 N. Y. 144; *New* v. *Village,* 158 N. Y. 41; *Bendict* v. *Arnoughs,* 154 N. Y. 715; *Edmonston* v. *McLoud,* 16 N. Y. 543. To sustain the causes of action alleged in the common counts, there is not a word of proof. On such a record, the case was submitted to the court, not a jury. Under such circumstances, the

established practice is to dispose of the case finally in the appellate court. *Dotson* v. *Skaggs,* 77 W. Va. 372, 87 S. E., 460; *Allen* v. *St. Louis Bank,* 120 U. S. 20; *Rolling Mill* v. *Rhodes,* 121 U. S. 255; *Fort Scott* v. *Hickman,* 112 ·U. S. 150.

The judgment will be reversed, the finding set aside and the demurrer to the special count sustained, and it will be further adjudged here that the plaintiffs take nothing by their action. ·

*Reversed, and judgment for defendant.*