READ *v.* TELEPHONE COMPANY.

(*Nashville.* March 8, 1894.)

1. PRINCIPAL AND AGENT. *Agent's powers.*

An agent, with authority implied from a general agency, or expressly conferred, to sell the shares of stock of his principal, has no power to pledge them for his own individual debt or benefit. (*Post, pp. 488, 489.*)

Case cited : 120 U. S., 20.

2. CORPORATIONS. *Unauthorized transfer of stock.*

If a corporation transfers its stockholders' shares upon its books, upon the assignment of the owner's agent, without requiring production or proof of the agent's authority, and the transfer proves to have been unauthorized, the company will be compelled, at the suit of the share-holder, to re-instate him to his rights. (*Post, pp. 489–491.*)

Cases cited and approved : Caulkins *v.* Gas-light Co., 85 Tenn., 683 ; Smith *v.* Railroad, 91 Tenn., 230.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

GRANBERY & MARKS for Complainant.

VERTREES & VERTREES for Defendant.

McALISTER, J. This bill was filed in the Chancery Court of Davidson County by Mrs. Martha

M. Read, of Washington, against the Cumberland Telegraph and Telephone Company, to compel the company to issue to complainant forty shares of its capital stock. The complainant was originally the owner of forty shares of stock of the par value of $100 per share. It is alleged in the bill that her certificate of stock was in the keeping of one Adolph Dahlgren, who, on May 1, 1891, undertook to assign the same to Thos. S. Marr, by signing complainant's name to a transfer thereof, as her agent and attorney, and that defendant corporation undertook to transfer this stock on its books to said Thos. S. Marr. Complainant further alleges that Dahlgren was not authorized by her to make this sale and transfer. She alleged that the attempted transfer was without her knowledge or consent, and, as soon as it became known to her, she notified defendant corporation that the act of said Dahlgren was unauthorized, and disaffirmed it. Complainant prayed that defendant issue a certificate to her as evidence of her rights as a shareholder in said corporation, and that she have a decree for the accrued dividends on said stock since May 1, 1891.

The defendant answered, and, among other things, averred that complainant was well acquainted with all the facts at the time; that she knew that said Dahlgren had transferred and indorsed said certificate; that she had authorized it to be done, and, with full knowledge thereof, ratified and affirmed the same; that with full knowledge of all the

facts, as above stated, the complainant had had a final settlement with her agent, Mr. Dahlgren, and ratified and affirmed what he had done. It denies that the transfer, when made by Mr. Dahlgren, was made without the knowledge or consent of complainant, and avers the fact to be that Mr. Dahlgren was her agent and attorney, and clothed by her with full power and authority to transfer and assign the same and to collect all dividends declared thereon. It denies that complainant has never parted with her stock, and avers that she sold and assigned the same to Thomas S. Marr. It denies that the stock has continued to be hers since the sale and transfer thereof to said Marr, and denies that she is entitled to any dividends since said sale thereof to him. It denies that it owes complainant any thing whatever, and avers that it has paid all dividends declared on said stock to the rightful owners and holders thereof. It avers that she is estopped to deny the authority of her agent, Dahlgren, to transfer and assign said stock, by reason of her own conduct in clothing him with full authority to act for her as her general agent and attorney in fact, and in making a settlement with him with knowledge of these facts.

The Chancellor rendered a decree in favor of complainant on October 31, 1893. He decreed as follows: "That complainant be restored to all her rights as a stockholder in defendant corporation, and that defendant corporation hereafter rec-

ognize her as such stockholder, and that it issue to her a proper stock certificate showing her ownership of said stock, and that it pay over to her all dividends declared thereon after May 1, 1891, which have not heretofore been paid complainant. It is further ordered that defendant pay the costs of this cause, for which let execution issue."

Defendant appealed, and has assigned the following errors:

*First.*—The evidence shows that the certificate of stock issued to complainant was sold and transferred to Thos. S. Marr, in her name, by A. Dahlgren, as her agent and attorney; and that Mr. Dahlgren had authority from her to make the said sale and to transfer the said stock.

*Second.*—The evidence shows that complainant constituted Mr. A. Dahlgren her general agent and attorney to transact all business at Nashville, Tennessee, for her in her room and stead; and their general course of dealing was such as to warrant the defendant in dealing with Mr. Dahlgren as her general agent, with power to act for her in as full a manner, with respect to all matters at Nashville, as she could act in person.

*Third.*—The Court erred in sustaining the exception made by complainant to the answer of A. Dahlgren to the sixteenth interrogatory propounded to him, and in excluding his said answer to any part thereof, made to said interrogatory, because the answer of the said witness to the interrogatory propounded to him, and his whole answer

thereto, is responsive to the question, relevant to the issues, and competent evidence.

*Fourth.*—The evidence shows that complainant ratified and approved the sale and transfer of the said stock sold and transferred by Mr. Dahlgren; and that she ratified the said sale and transfer after the same had been made by said Dahlgren, and with knowledge of all the facts with respect thereto.

*Fifth.*—The evidence shows that complainant has estopped herself, by her own conduct, from denying the authority of Mr. Dahlgren to sell and transfer said stock in her name as her agent and attorney.

*Sixth.*—The evidence shows that complainant authorized the sale and transfer of said stock to be made by Mr. Dahlgren as her agent and attorney; and that she directed and authorized him to invest the proceeds thereof in real estate in Chicago, Ills., which was done by him; and the land deeded to her, bought with the proceeds of the sale of said stock.

It is important to understand at the outset what the transaction between these parties really was. It appears that the stock in controversy was originally purchased by Adolph Dahlgren for Mrs. Read, and with funds belonging to her. The certificate of stock was kept by Dahlgren for some months, when he sent it to Mrs. Read. Mrs. Read then retained possession of the stock for several years, when she returned it to Dahlgren for

the purpose, as stated by her, "in case there came a suitable time, I wanted it sold, but I never told him to do that." Dahlgren kept it until May 1, 1891, when he pledged it to Thos. S. Marr, as collateral to secure an individual loan of $1,200. The certificate was indorsed to Thos. S. Marr, in the name of "Mrs. M. M. Read, by A. Dahlgren, agent and attorney." Marr immediately sent this certificate to the telephone office to be transferred to him on the books of the company, but his agent was informed by Mr. Caldwell, the president, that the stock could not be transferred without a power of attorney from Mrs. Read.

It appears, however, that, at this time, Dahlgren was in Chicago, and was represented in Nashville by Lindsley. Mr. Lindsley had negotiated the loan from Thos. S. Marr for Dahlgren upon the hypothecation of the telephone stock. When, therefore, Caldwell, the president of the telephone company, refused to transfer the stock, Mr. Lindsley was requested to see him on the subject. Mr. Lindsley asked Mr. Caldwell what was the matter with the stock, and Mr. Caldwell told him he could not transfer the stock without the power of attorney. After some conversation, Lindsley told Caldwell that stock had been transferred on previous occasions, and that Mr. Dahlgren's power of attorney had then been given to the company, and that the company had it on file. Mr. Caldwell said they knew nothing about it. Mr. Lindsley remarked: "Well, you have it, and I say to

you it will be all right to make the transfer."
Then Mr. Caldwell said: "If you say it is all
right, I will make the transfer." It was then
transferred to Thos. S. Marr on the books of the
company.

It appears that default was made by Dahlgren
in the payment of the loan from Marr, and the
stock was sold for the satisfaction of Marr's debt.
There was a small surplus from the sale after sat-
isfying the debt, which was paid over to Dahl-
gren.

It is insisted, on behalf of the telephone com-
pany, that Dahlgren was the general agent of
Mrs. Read at Nashville; that he was authorized
to act for her in as full and complete a manner
as she could have acted in person, and, in addi-
tion to his general authority as an agent, that
Dahlgren was specifically directed to sell the stock
involved in this controversy. The authority of a
general agent is measured by the usual scope and
character of the business he is empowered to trans-
act, and for any act done by him which is nat-
ural and customary in the management of such
business, the principal is bound. If it be con-
ceded that Dahlgren was constituted a general
agent for Mrs. Read to transact her business in
Nashville, and, moreover, was specifically empow-
ered to *sell* this telephone stock, would such au-
thority carry with it the right of the agent to
hypothecate the stock for the security of his in-
dividual indebtedness? An agent to sell goods,

though being the apparent owner by reason of having possession by permission of the principal, cannot pledge them for his own debt. James on Pledges, 372. An authority to sell or transfer stock for a principal does not authorize the agent to transfer it by way of security for his own private debt, for it is not an ordinary exercise of such authority. Story on Agency, 78. An agent authorized to manage and carry on his principal's business has no implied authority to pledge or mortgage. Mechem on Agency; *Allen* v. *Bank*, 120 U. S., 20.

It is admitted by counsel for defendant that an agent who is authorized to sell would not possess the implied authority to pledge the stock so as to give to the pledgee a right to hold it as against the principal; but it is insisted that no such question arises in this case; that this is not a controversy between the pledgee of the stock and the principal; that the stock was not pledged at the time this suit was brought. It is admitted that Dahlgren did pledge it, but he afterwards ordered it sold in satisfaction of the pledge. The argument is, the fact that it had once been pledged cannot affect the legal question, and the case is to be treated now as though the stock had been sold in the first instance, and transferred upon the books of the company.

We cannot concur in this view of the case. So far as the record discloses, this stock was never transferred but once, and then to Thomas S. Marr,

the pledgee, with whom it had been deposited as collateral security for a loan to Dahlgren. The fact that the pledgee afterwards sold the stock for the satisfaction of the debt, although sold with the consent and by the direction of Dahlgren, cannot bring such sale within the scope of Dahlgren's agency. We are dealing now with the transfer of complainant's stock by the defendant company to Thomas S. Marr, the pledgee of Mrs. Read's agent. The case, therefore, must turn upon the authority of Mrs. Read's agent to pledge this stock, and his authority to direct a transfer of the stock on the books of the telephone company to Thomas S. Marr, his pledgee.

In Cook on Stockholders, 398, the rule is stated that its own safety requires that a corporation be satisfied of the right of a person proposing to make a transfer of stock to do what he proposes. *Caulkins* v. *Gas-light Co.*, 1 Pickle, 683. In the case of *Smith* v. *Railroad Co.*, 7 Pickle, 230, it was held, viz.: "The fact that stock is assigned by one other than the one to whom it was issued, devolves upon the corporation, when called upon to transfer the shares and issue a new certificate, the duty of inquiry as to the power of the assignor to make the assignment. It made no inquiry. It assumed, therefore, the risk as to the power of the assignor to dispose of the stock."

In the case now being adjudged, it appears that the president of the telephone company, when requested to make this transfer, was not misled by

any ostensible power that seemed to be vested in Dahlgren. Caldwell declined to recognize his authority, and expressly refused to make a transfer of the stock without a power of attorney from Mrs. Read. The president of the company was at last induced by Mr. Lindsley to make the transfer, and made it alone upon his personal guarantee and assurance that it was all right. This, therefore, is not a case where the company can seek protection under any apparent authority with which the agent was clothed by his principal. The case must turn upon the actual authority possessed by the agent to make the pledge and transfer. Conceding that Dahlgren was the general agent of Mrs. Read in Nashville, and acted for her in loaning out money, in making investments, in purchasing stock, and in conducting her financial transactions, and admitting that he was expressly empowered, or specifically directed, to sell this stock, all this authority added together would not authorize Dahlgren to make a pledge of this stock for his individual indebtedness. The company, in this case, was put upon inquiry, and had knowledge, or at least competent means of knowledge, that Dahlgren had pledged the stock for his own benefit. This disposes of the principal question presented in the record. Other assignments have been considered, but, in the opinion of the Court, they are not well taken.

The decree of the Chancellor is affirmed.